[Crim. No. 3514. First Dist., Div. Two. Mar. 20, 1959.]

THE PEOPLE, Respondent, v. JESUS VICTOR LOPEZ, Appellant.

Nicholas G. Schoonbrood, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown and Stanley Mosk, Attorneys General, Clarence A. Linn, Chief Assistant Attorney General, and John S. McInerny, Deputy Attorney General, for Respondent.

KAUFMAN, P. J.—Defendant Jesus Victor Lopez was charged by information with three counts of assault with a deadly weapon with intent to commit murder (Pen. Code, § 217). Count I on Leola Wells on or about September 2, 1957; Count II on Ruth Briggs on the same date; Count III on Alton Hawkins on the same date. Count IV charged robbery from the person of Leola Wells. The information also alleged a violation of section 12022 of the Penal Code (being armed with a deadly weapon at the time of the commission of a felony) and three prior convictions. Defendant appeals from a judgment of conviction entered on a jury verdict finding him guilty of assault with a deadly weapon on Counts I, II and III, and of robbery in the first degree on Count IV. He also appeals from the order denying his motion for a new trial. He contends that he was denied a fair and impartial trial because: (1) He was prevented from bringing to the attention of the jury the fact that the three complaining witnesses were involved in illegal narcotics traffic; and that their testimony was therefore false and untrue; (2) The jury obviously ignored the presumption of innocence in his favor by finding him guilty in the face of the many inconsistenceis in the testimony of the complaining witnesses; (3) There was insufficient evidence to show the required union between act and intent; (4) He was denied effective representation of counsel as the public defender appointed to represent him was inadequately prepared for trial; (5) The district attorney during the trial of the case and in her final argument to the jury committed prejudicial error.

The circumstances of the crime were related at the trial by the complaining witnesses as follows: At about 5:30 p. m. in the afternoon of September 2, 1957, Mrs. Wells was in her apartment at 428 Lily Street in San Francisco, with two of her friends, Alton Hawkins and Ruth Briggs. They were interrupted by the ringing of the front door bell. Mrs. Briggs went to see who was there. When she opened the door, she saw the defendant. He asked for Mrs. Wells' daughter, Jocelyn. After Mrs. Briggs replied that Jocelyn was not at home, defendant took a gun from his pocket and ordered Mrs. Briggs back upstairs, forcing her to walk ahead of him.

Defendant entered the Wells' apartment with his gun

drawn. He first announced that he was a policeman and had come to find Jocelyn. He told Mrs. Wells that Jocelyn talked too much because he had heard Jocelyn say that she had just purchased a new car and had some money left over. He had come up to the apartment to get this money. Defendant searched the apartment for the money he thought was there and took a dollar from Mrs. Wells' purse, which was all he could find. Mrs. Wells tried to convince him that she only had about six dollars in her purse and begged the defendant to leave and not harm them. Defendant insisted that he was going to kill all of them, and that they hurry up and give him the money as he had three or four more houses to ''turn over.'' Defendant had Mrs. Briggs obtain a piece of rope from a clothesline so he could tie up Mr. Hawkins' feet. Then, the defendant terrorized the two women and Mr. Hawkins for the next hour and a half.

Finally, Mrs. Wells jumped on the defendant and struggled to disarm him. During the struggle, the defendant fired his gun and wounded both Mrs. Wells and Mr. Hawkins. After they succeeded in disarming him, the defendant ran from the apartment. Mrs. Briggs' son called the police and an ambulance. Mrs. Briggs turned the gun taken from the defendant over to the police when they arrived about 20 minutes later. Defendant was subsequently arrested in his room at the YMCA on Turk Street.

Defendant's version of the circumstances is somewhat different. He testified that on the evening of September 1, he and some friends had gone to the Fillmore district as his friends wanted to buy narcotics. They made a purchase through one William Campbell and returned to their hotel. The narcotics purchased turned out to be of low quality and his friends asked him to return with them to the Fillmore district and find Mr. Campbell and get their money back. In a bar they found Mr. Campbell who introduced them to a lady named Jocelyn and indicated she would ''fix up the prior business.'' Defendant's friends purchased a new supply which also turned out to be a dud. Then defendant and his friends made a third trip to the Fillmore district in an unsuccessful attempt to find Jocelyn. Defendant then agreed to get the money back for his friends the next day, in order to keep them from beating up Campbell.

The next evening, September 2, the defendant met Jocelyn. She drove him to the apartment at 428 Lily Street and told him to wait there until she ran another errand. When defendant entered the apartment, Mrs. Wells and Mrs. Briggs were

there. While he was waiting for Jocelyn, he saw Mrs. Wells sell two papers of narcotics to a woman he knew as "Tina Baby." Mrs. Wells and Mrs. Briggs tried to get him to accept some more narcotics as satisfaction for the money he was trying to collect. While the defendant was talking to Mrs. Wells and Mrs. Briggs, the telephone rang. He assumed the call came from Jocelyn, as Mrs. Wells' attitude changed. He was suddenly struck from behind by Mr. Hawkins who had just entered the apartment. While the defendant fought Hawkins, he was assaulted by Mrs. Wells and Mrs. Briggs. During the struggle, Mrs. Wells' gun went off several times. Finally, he escaped and returned to his room where a friend tried to care for his wounds until his arrest several days later. Defendant denied the ownership of the gun, that he had assaulted anyone in the room, or searched for and taken any money.

On cross-examination, the defendant admitted three prior felony convictions for attempted grand larceny, attempted assault and armed robbery. Defendant's witness, Clarence Pike, testified that he had seen the defendant arguing with Jocelyn Wells, and William Campbell on September 2, 1957, and that shortly thereafter he saw Jocelyn and Mr. Hawkins talking together. On cross-examination, Pike admitted two prior felony convictions; that he had been confined in the county jail with the defendant. In rebuttal, Mrs. Wells denied that she had ever sold narcotics to anyone; Mrs. Briggs denied discussing narcotics with the defendant; Mr. Hawkins denied conversing with Jocelyn on September 2.

The above statement of facts clearly indicates that the defendant's first contention is patently devoid of merit. The record reveals that the defendant testified at length about the involvement of the prosecuting witnesses in the sale of narcotics, and the series of events which led to his presence in the apartment. The jury had a right to disbelieve defendant's version of the facts. The credibility of witnesses is a matter for the trier of fact and if the result reached below is supported by substantial evidence, it cannot be disturbed on appeal unless the testimony is inherently impossible or improbable. (*People* v. *Ashley,* 42 Cal.2d 246 [267 P.2d 271] ; *People* v. *Wilder,* 151 Cal.App.2d 698 [312 P.2d 425] ; *People* v. *Villarico,* 140 Cal.App.2d 233 [295 P.2d 76] ; *People* v. *White,* 115 Cal.App.2d 828 [253 P.2d 108] ; *People* v. *Mason,* 130 Cal.App.2d 533 [279 P.2d 621].) The testimony of the complaining witnesses here is not inherently impossible

and improbable.   There are minor discrepancies, but this is normal under the circumstances here presented, and does not raise a suspicion that the witnesses are lying or that the stories are inherently improbable.   (*People* v. *Moore,* 137 Cal.App.2d 197 [290 P.2d 40].)

Nor is there any merit in defendant's argument that the jury ignored the presumption of innocence in his favor. The record indicates that the jury was instructed about the presumption.   It is generally presumed on appeal that a jury has properly exercised its functions and acted according to instructions.   (*People* v. *Scaggs,* 153 Cal.App.2d 339 [314 P.2d 793] ; *People* v. *Foote,* 48 Cal.2d 20 [306 P.2d 803] ; *People* v. *Cobb,* 45 Cal.2d 158 [287 P.2d 752] ; *People* v. *Drake,* 151 Cal.App.2d 28 [310 P.2d 997] ; *People* v. *Grimes,* 113 Cal. App.2d 365 [248 P.2d 130].)

Defendant next contends that there was insufficient evidence to show the requisite union between act and intent, as the prosecution never disproved his claim that he was in the apartment at Jocelyn's invitation and for the purpose of awaiting her return, as Jocelyn was never called as a witness.   This argument relies on the presumption about the adverse nature of evidence not produced.   In the first place, this presumption applies to evidence wilfully suppressed rather than evidence not produced in court.   (*People* v. *Washington,* 113 Cal.App. 352 [298 P. 121].)   In the second place, under both versions of the facts, Jocelyn was not present when the crime was committed.   The prosecution is not compelled to call any particular witness so long as there is fairly presented to the court the material evidence bearing upon the charge for which the defendant is on trial.   (*People* v. *Parry,* 105 Cal.App.2d 319 [232 P.2d 899].)   Furthermore, the jury chose to believe that the defendant, rather than the complaining witnesses, committed the unlawful act of assault.   An unlawful intent is logically inferred from the doing of an unlawful act. (*People* v. *McLaughlin,* 111 Cal.App.2d 781 [245 P.2d 1076].) Therefore, the requirement of union of act and intent (Pen. Code, § 20, referred to in the court's instruction), was met.

The record does not support defendant's contention relating to ineffective representation by his counsel.   There was nothing in the record to indicate that the public defender was not conscientious and adequate.   (*People* v. *Wren,* 140 Cal.App.2d 368 [295 P.2d 54].)   As this court (Division 1) recently said in *People* v. *Mosely,* 164 Cal.App.2d 829 at p. 833 [331 P.2d 65], ". . . the courts are uniform in holding

that the claimed absence of effective representation will not be sustained unless the circumstances surrounding the trial indicate a representation so lacking in competence that it becomes the duty of the court to observe and to correct it.''

Furthermore, defendant's specific complaint about a lack of investigation before trial was denied and disproved by his counsel.

Defendant's final contention is that the prosecuting attorney committed prejudicial misconduct during defendant's cross-examination of Mrs. Wells and in the closing argument to the jury. The record does not support the substance of this contention and also reveals that no timely objections were raised by defendant or his counsel. No objection being made, the point is waived.

We conclude that the record before us amply supports the judgment of conviction and order denying a new trial.

Judgment and order denying a new trial affirmed.

Dooling, J., and Draper, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 13, 1959.