[Crim. No. 6646. Second Dist., Div. Two. Nov. 18, 1959.]

THE PEOPLE, Respondent, v. FRANK SMITH, Appellant.

Frank Smith, in pro. per., for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Marvin L. Part, Deputy Attorney General, for Respondent.

ASHBURN, J.—Defendant appeals from a conviction of selling heroin (Health & Saf. Code, § 11500). He challenges the sufficiency of the evidence. ▮ In examining that assignment of error " '[w]e must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' ▮ If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury." (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778].)

On August 20, 1958, Officer John Walton, of the Los Angeles Narcotics Detail, talked with defendant at the corner of 115th Street and Wilmington Avenue, in Los Angeles, at about 6:20 p.m. With the officer was an informer named Elbert Landry, commonly known as "Aboo." The officer testified: "The man with me told Frank Smith, 'Let's you and I cow one together.' Frank Smith said, 'How much money have you got?' He said, '$2.00.' Frank Smith said, 'Come on, give me your money.' " Walton gave Landry two dollars and he handed it to defendant. The two of them crossed the street and disappeared. In about 15 minutes they returned and Landry said to defendant "[g]ive him the stuff," whereupon defendant delivered to the officer a bindle containing approximately two grains of heroin. At the police station defendant and Officer Walton had this colloquy: "The defendant said— asked, 'Did you have another man with you?' I said, 'Yes.' He said, 'Was it Aboo?' I said, 'Yes'; and that's the name. Q. He said was it what? A. Aboo." At the trial defendant denied the transaction but not the foregoing conversation,

which carried the plain inference that he knew the identity of the informant. Officer Walton also said on cross-examination: "Well, as to the defendant, he knows who was with me at the time of the transaction." That his counsel also knew this is evidenced by the fact that he asked defendant when testifying if he knew "Yocum Slim" and then asserted in a following question that the officer had testified that he had with him one "Elbert Landry" nicknamed "Yocum Slim"; the officer had not mentioned Yocum Slim, but defense counsel from time to time thereafter referred to Landry as "Yocum Slim."

Defendant denied the entire transaction related by the officer, but the court rejected his testimony. ■ Accepted as true was the testimony of Officer Walton, which required no corroboration. (*People* v. *Johnson,* 99 Cal.App.2d 559, 563 [222 P.2d 58]; *People* v. *Carr,* 170 Cal.App.2d 181, 188 [388 P.2d 479]; *People* v. *Bryant,* 157 Cal.App.2d 528, 533 [321 P.2d 45]; *People* v. *Price,* 172 Cal.App.2d 776, 780-781 [342 P.2d 437].)

■ But appellant argues that the officer's testimony was inherently improbable and hence there was no evidence to support the conviction, there being no witnesses but Officer Walton, the defendant and the chemist who pronounced the contents of the bindle to be heroin. The crux of appellant's argument is found in the admission of Officer Walton on cross-examination that it is unusual to get two grains of heroin for two dollars, that it usually sells for nine to ten dollars; also, "Q. Do you have any idea what it means when one person says to another, 'Let's you and I cow one'? A. Yes, sir. It means they were going together and buy a bindle or split it between them. . . . Q. How do you explain, then, they were 'cowing one,' and Landry took the $2 and went with Smith to 'cow one,' that they brought some back to you? A. I don't know. I can't explain that myself. Q. That doesn't make sense in the narcotic field? A. No, sir, it doesn't. Q. Are you sure he brought some back to you? A. Yes, sir, he did." ■ But as we said in *People* v. *Baserto,* 162 Cal.App.2d 123, 125 [327 P.2d 558]: "The argument of inherent incredibility will not lie in an appellate court unless there exists 'either a physical impossibility that they [the witness' statements] are true, or their falsity [is] apparent without resorting to inferences or deductions.' (*People* v. *Huston,* 21 Cal.2d 690, 693 [134 P.2d 758].) See also *People* v. *Huston,* 156 Cal.App.2d 670, 671

[320 P.2d 175].'' This standard has not been met at bar. There is no insufficiency of the evidence here.

Appellant's main point seems to be that the court denied him a fair trial, due process, by failing to require the prosecutor to find and produce Landry as a witness so that defense counsel could examine him. The pertinent facts bearing upon this contention are the following.

Officer Walton gave the name of the informer, Elbert Landry; told all he could in the way of description—a Negro about 5 feet 11 inches tall, weighing about 185 pounds, 34 years old, with a gold tooth in the upper right portion of the mouth, and with no noticeable scars on his face. He also said that Landry lived, before trial, on Adams Boulevard between Central Avenue and Griffith, on the north side of the street, house number unknown, but house is about the seventh one west of Central Avenue; the house itself was described. The witness further said he did not know Landry's last address; that he stayed around East Fifth Street quite a bit; he last saw him two to two and one-half months before the trial and had no idea where to find him; he had heard nothing about Landry or his whereabouts in the last two and one-half months and knew of no officers who might know where he had gone. The witness was cross-examined elaborately in a fruitless attempt to show that the informer had been induced by the prosecution to absent himself so as to be unavailable as a witness.

It was developed among other things that Landry had worked with Officer Walton on 25 to 28 cases, nine of which had come to trial, but Landry did not appear therein as a witness. Anent this matter, the trial judge remarked during the hearing upon motion for new trial: ''The more recent information we have, if you want my comment, is that several people were looking for him [Aboo]. His life isn't worth a plugged nickel here, so we are informed.'' The court suggested and granted a continuance from November 21 to December 19 to afford defense counsel an opportunity to find the informer. On the latter date Mr. Branch, defense attorney, informed the court of an unsuccessful effort to find Landry and the trial proceeded without any request for further continuance. It fairly appears that the prosecution had given all the assistance toward locating the informer which reasonably could be expected. The complaint is that the court did not of its own motion require the prosecution to locate and produce Aboo as a witness; no such motion was made by defendant's' counsel.

█ This case is quite similar to *People* v. *Alexander,* 168 Cal.App.2d 753 [336 P.2d 565] (hearing denied by Supreme Court; certiorari denied by United States Supreme Court on October 19, 1959). We there said, at page 754: "Having received what appears to be all the information possessed by the prosecutor concerning Thomas, and having been afforded two weeks' time to locate him, appellant asserts a right to compel the prosecutor to locate and produce the witness for testimonial purposes. No cases are cited in support of this proposition, we know of none and apprehend that none can be found. Such a rule would be an unreasonable extension of the informer doctrine and we hold that it does not and should not exist. (*Cf. People* v. *Taylor,* 159 Cal.App.2d 752, 756 [324 P.2d 715]; *Dear Check Quong* v. *United States* (C.A.D.C.), 160 F.2d 251, 253; *Simmons* v. *United States* (C.A.D.C.), 220 F.2d 377, 378; *United States* v. *Gernie* (2 Cir.), 252 F.2d 664, 668-669.)" See also *People* v. *Scott,* 170 Cal.App.2d 446, 454 [339 P.2d 162]; *People* v. *Price, supra,* 172 Cal.App. 2d 776, 780 [342 P.2d 437]; *People* v. *Wein,* 50 Cal.2d 383, 403 [326 P.2d 457]; *People* v. *Lopez,* 169 Cal.App.2d 4, 9-10 [336 P.2d 614].

█ It is said that Penal Code, section 825, was violated, in that appellant was arrested on September 5, 1958, and not taken before a magistrate until September 11, 1958. The section says: "The defendant must in all cases be taken before the magistrate without unnecessary delay, and, in any event, within two days after his arrest, excluding Sundays and holidays. . . ." The record before us affords no basis for this contention and it cannot be entertained. (*People* v. *Justice,* 167 Cal.App.2d 616, 622 [334 P.2d 1031].) █ But if the asserted facts were established a violation of the statute would not aid appellant without a further showing of prejudice suffered by him as a result of the violation. (*People* v. *McCrasky,* 149 Cal.App.2d 630, 637 [309 P.2d 115]; *People* v. *Blankenship,* 171 Cal.App.2d 66, 80-82 [340 P.2d 34]; *People* v. *Collins,* 117 Cal.App.2d 175, 181 [255 P.2d 59].) And there is no foundation here for an inference of such prejudice.

█ Claimed misconduct of the prosecutor fails of sufficient factual support. The argument of appellant refers to certain expressions used by the deputy district attorney upon argument of the motion for new trial: "Now, so far as this missing witness is concerned, summing it up as graphically as I could, the narcotic menace is a thing that is with society; and society, in order to fight it, has to use the scum

of the world, they have to find their help and their aid and their information where it can be found. I believe your Honor could almost take judicial notice of the fact that policemen have for years been using informants in narcotic cases.'' Also: ''Now, surely the People's case should not fall because this miserable wretch has decided to exercise his God-given right of self-preservation.'' In the prevailing circumstances we see no impropriety in these remarks. ██ Moreover, no objection was made to these statements at the trial and it is too late to raise the objection for the first time on appeal (see *People* v. *Codina*, 30 Cal.2d 356, 362 [181 P.2d 881]); it cannot be presumed that the trial judge was prejudiced thereby. (*People* v. *Jones*, 52 Cal.2d 636, 653 [343 P.2d 577].)

There was no denial of a fair trial and no insufficiency of the evidence in this case.

Judgment affirmed.

Fox, P. J., and Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 13, 1960.