Filed 9/27/23  Phillips v. AAA N. Cal., Nevada and Utah Ins. Exchange CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| MILLICENT PHILLIPS, | C095321 |
| Plaintiff and Appellant, | (Super. Ct. No. 187346) |
| v. | |
| AAA NORTHERN CALIFORNIA, NEVADA AND UTAH INSURANCE EXCHANGE et al., | |
| Defendants and Respondents. | |

Plaintiff Millicent Phillips owned a home in Redding.  She obtained a homeowners insurance policy from defendants AAA Northern California, Nevada and Utah Insurance Exchange and CSAA Insurance Exchange.  In 2012 and again in 2016, when plaintiff was not living at the property, intruders broke into the house, damaged the property, and stole personal property.  Plaintiff reported both instances to defendants and, following the 2016 incident, submitted a personal property claim for both incidents.  Defendants paid plaintiff approximately $25,000 for her personal property losses, substantially less than the amount of the losses plaintiff claimed.  Plaintiff commenced this action asserting causes of action for breach of contract and tortious breach of contract

1

-- bad faith.  A jury declined to award any damages to plaintiff under the asserted causes of action, and specifically found defendants' failure to pay or delay in payment of additional policy benefits was not unreasonable or without proper cause.

On appeal, plaintiff asserts (1) the jury's verdicts were the result of instructional errors, (2) the jury improperly and arbitrarily rejected uncontroverted expert testimony, (3) no issue concerning the statute of limitations and contractual limitations periods could properly result in an award of zero damages, and (4) substantial evidence does not support the jury's verdicts.

We affirm.

## BACKGROUND

### *First Amended Complaint*

According to plaintiff's first amended complaint, she owned a residence in Redding.  She purchased homeowners insurance from defendants.[1]

In June 2012, someone entered the residence and vandalized, stole, damaged, and destroyed covered property.  Plaintiff filed a claim with defendants.  According to plaintiff, defendants assessed an unreasonable amount of depreciation to the personal property, never paid plaintiff the true estimated value of the property, made repeated requests for unnecessary information, delayed in processing the claim, and ultimately constructively denied the claim by alleging there had been a lack of contact from plaintiff.

The second incident occurred in January 2016.  Again, someone entered the residence and stole, damaged, and destroyed covered property.  Plaintiff filed a claim

---

[1]  At trial, the parties stipulated that both defendants AAA Northern California, Nevada and Utah Insurance Exchange and CSAA Insurance Exchange "are jointly to be treated as the same entity for purposes of your verdict."  We do not distinguish between defendants on appeal, instead referring to defendants collectively throughout.

with defendants.  According to plaintiff, defendants undervalued personal property and assessed an unreasonable amount in depreciation.

Plaintiff asserted causes of action seeking to recover damages for (1) breach of contract and (2) tortious breach of contract -- bad faith.

*The Trial*

Plaintiff purchased the Redding residence in 2006 to be her "forever home." However, after moving into the property, in 2009, she returned to the Bay Area for work. She remained in the Bay Area between 2010 and 2012 when her adult son was hospitalized in the San Jose area.  Plaintiff would visit her Redding property on the weekends.

In June 2012, plaintiff discovered there had been a break-in at her property.  Six windows were broken and nine doors breached.  Inside, there was glass everywhere, items were strewn about, and there was excrement on the carpets.

Plaintiff prepared an initial inventory of missing items and notified defendants. Eventually, defendants' employee, Lynda Scobba, assured plaintiff not to worry, that it was "being all taken care of."  Scobba did not request any additional information. Plaintiff assumed she had provided Scobba with all the information she needed.  Asked if she did not communicate with defendants again about the 2012 break-in until the next break-in in 2016, plaintiff responded, in part, "I believe that I provided [Scobba] with everything that she needed to move forward on the 2012."

Scobba testified she sent a document to plaintiff instructing her how to fill out a form for her personal property claim.  Scobba could not recall whether she spoke with plaintiff again after that.  However, she did attempt to call plaintiff on several occasions and left her voicemails which were not returned.  Scobba never received a list from plaintiff with the details of the items lost.  She also never received photographs showing the damage to the real property itself that she requested from the contractor.  The contractor indicated he had not heard from plaintiff, and Scobba testified she sent a

3

"status to close" letter, indicating that if defendants did not hear from plaintiff, defendants would "close the file." Scobba closed the file at the end of October 2012.

Defendants' expert, William Thomas, testified that, following the 2012 first notice of loss, defendants did not have what they needed to properly adjust the file. "They were not furnished with proper documentation to adjust the claim. They needed documentation on the damaged property, especially the condition of it, the age of it, . . . they just didn't have the proper documentation to adjust the file, the claim, in my opinion." The list of stolen items plaintiff furnished in connection with the police report was too vague, did not contain ages of the items, and did not describe their condition. Defendants did not receive additional information regarding the 2012 loss until after the 2016 loss.

After the 2012 break-in, plaintiff did not consider the property to be habitable and did not believe the house was secure. When she would come to the area, she would stay with friends. She did not stay at the property, but rather would just visit it and make sure everything was okay.

In January 2016, plaintiff learned intruders had entered the residence again. As a result of this incident, the "house was in total devastation." The house "was practically stripped naked," and essentially all of her belongings were gone. Plaintiff again contacted an employee of defendants to report the incident, on this occasion Giovanna Rodarte. Plaintiff informed Rodarte of the new incident and also reported she had not finished her claim from the 2012 incident. Rodarte told plaintiff to combine the claims and inventory lists.

Constance Amos, employed by defendants, testified she did not receive any inventory list pertaining to the 2016 claim until December 2016, almost a year after plaintiff filed the claim. In Amos's experience, that was a long time for an insured to delay in providing a personal inventory list.

4

Theresa Eurby, a personal property associate for defendants, described her duties in that role: "process the inventory, basically, look up the items off the inventory that the insured provided for us; so I'm pricing out items based on their description and preparing an estimate for the adjustor." According to Eurby, she would determine the replacement cost of an item, then categorize the item, and then a computer program would calculate depreciation based on age.

Eurby worked on plaintiff's personal property list, which she completed in January 2017. Eurby priced some items on plaintiff's list lower than plaintiff's estimates, and some higher. As Eurby recalled, the total replacement value of plaintiff's claim was approximately $86,000 before factoring in depreciation. According to Eurby, the predepreciation replacement cost of plaintiff's items collectively was substantially less than plaintiff estimated. Eurby testified the "starting point to determine the actual cash value was $94,493.96 less than what" plaintiff stated. Eurby later testified the "net claim" that would have been paid to plaintiff was $27,669.00.

Eurby testified that, at some point, she received a document from plaintiff consisting of approximately 500 pages. She only reviewed the first 100 to 150 pages, however, "because it was listing out the items that I priced out for the insured." After Eurby had reviewed those pages, the adjustor working on the case, Amos, told her, "Don't worry about it." Eurby testified at trial, however, that, in retrospect, she felt she owed it to the insured to review the entirety of the document the insured submitted.

Insurance adjuster Fred Yancey, who became involved in this matter to assist plaintiff, testified defendants paid plaintiff approximately $25,000 "for at least some of the property items in dispute."

The parties stipulated plaintiff "suffered personal property losses that were covered under the insurance policy, but do not agree as to the amount of those personal property losses." The parties also stipulated plaintiff timely filed this action and the statute of limitations was not a matter for the jury's consideration.

5

### The Verdicts

The special verdict forms do not appear in the record on appeal. As stated in the reporter's transcript, the jury found plaintiff did suffer a loss that was covered under her policy with defendants; defendants were notified of the loss as required under the policy; "the amount of the covered loss the Defendants failed to pay Plaintiff" for personal property losses and for loss of use was zero dollars; defendants failed to pay or delayed payment of policy benefits, but their failure to pay and/or delay in payment was not unreasonable or without proper cause and was not a substantial factor in causing plaintiff harm; and defendants did not act with malice, oppression, or fraud.

### Plaintiff's Postverdict Motions and Judgment

On September 17, 2021, plaintiff filed a motion for "retrial" pursuant to Code of Civil Procedure section 659. On the same date, she filed a motion for judgment notwithstanding the verdict pursuant to Code of Civil Procedure section 657. On September 27, 2021, plaintiff filed a memorandum of points and authorities in support of her motion for a new trial based on insufficiency of the damages award and insufficiency of the evidence to justify the verdict. Also on September 27, 2021, plaintiff filed a motion to set aside and vacate the judgment.

In the judgment filed October 6, 2021, the trial court stated the jury found defendants not liable for breach of contract and tortious breach of contract -- bad faith. The court stated plaintiff was awarded zero dollars by way of the judgment, and that defendants were the sole prevailing parties.

On November 8, 2021, the trial court denied each of plaintiff's postverdict motions, concluding sufficient evidence existed to sustain the verdicts. Among other things, the trial court cited trial evidence of plaintiff's failure to cooperate as required under the policy and failure to mitigate damages. The court also referred to evidence supporting the jury's inherent finding that the subject property was not her primary residence for purposes of considering loss of use damages. Elsewhere, the court noted

6

that, notwithstanding plaintiff's characterization that defendants stipulated to liability, the stipulation was only that plaintiff sustained covered losses, not that they were liable under plaintiff's two causes of action.

Plaintiff timely appealed from the judgment and from the order denying her four postverdict motions. Our consideration of plaintiff's specific contentions is the same whether in the context of the judgment or the postjudgment order denying her postverdict motions.

## DISCUSSION

## I

### *The Appellant's Burden and Rules of Appellate Procedure*

" 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "It is the appellant's burden to demonstrate the existence of reversible error." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 766.)

An appellate brief must support each point by argument and, if possible, by citation to authority, and must provide citations to the record for factual assertions. (*County of Sacramento v. Singh* (2021) 65 Cal.App.5th 858, 861 (*County of Sacramento*).) " '[W]e may disregard factual contentions that are not supported by citations to the record [citation] or are based on information that is outside the record [citation]. We may disregard legal arguments that are not supported by citations to legal authority [citation] or are conclusory [citation].' [Citations.] Further, we may treat a point that is not supported by cogent legal argument as forfeited." (*Ibid.*; accord, *In re S.C.* (2006) 138 Cal.App.4th 396, 408; see Cal. Rules of Court, rule 8.204(a)(1)(B), (C).)

Plaintiff's briefing frequently fails to support factual assertions with citations to the record. (See Cal. Rules of Court, rule 8.204(a)(1)(C); *County of Sacramento, supra*, 65 Cal.App.5th at p. 861.) "We are not required to scour the record in search of support for a party's factual statements and may disregard such unsupported statements." (*Harshad & Nasir Corp. v. Global Sign Systems, Inc.* (2017) 14 Cal.App.5th 523, 527, fn. 3.)

We also must remark on plaintiff's disrespectful comments about the jury. According to plaintiff, "the jury misapplied the law, either because they were misled, misinstructed, and/or lazy." She also states the jury failed to honor its duty to calculate damages "and issued an award of zero but made it home by 4:00 pm on the Friday eve of a holiday weekend." Disparaging the jury with unsubstantiated accusations of dereliction is not persuasive and no way to establish reversible error. Moreover, "[i]t is generally presumed on appeal that a jury has properly exercised its functions and acted according to instructions." (*People v. Lopez* (1959) 169 Cal.App.2d 4, 9; accord, *Kraut v. Cornell* (1959) 175 Cal.App.2d 528, 533 [the "presumption is that the jury acted properly"].)

## II

### *Instructional Error*

Plaintiff asserts numerous instructional errors resulted in a miscarriage of justice. According to plaintiff, the jury instructions on mitigation and expert testimony, combined with defense counsel's misstatements of law, resulted in prejudicial error.

**A. Mitigation**

The trial court instructed the jury on mitigation with CACI No. 358. Plaintiff did not object to this instruction.

Plaintiff contends the jury misapplied the standard of mitigation. She maintains she provided information concerning her personal property losses, and yet, even with a stipulation that she sustained personal property losses, the jury returned a verdict of zero damages. Additionally, throughout her instructional error arguments, plaintiff advances

8

contentions that essentially amount to claims that the jury's determination was not supported by the evidence, a claim we address in part V of the Discussion, *post*.

What plaintiff fails to do is identify any way in which the mitigation instruction was deficient or an inaccurate statement of law. Other than reproducing the instruction, plaintiff does not discuss the language of the instruction at all. In that plaintiff's instructional error claim is conclusory and not supported by cogent legal argument, we may treat it as forfeited. (*County of Sacramento, supra*, 65 Cal.App.5th at p. 861.)

Under a separate subheading, plaintiff asserts the jury disregarded the fact that defendants were required to prove damages that could have been avoided. This contention pertains to the same mitigation instruction. However, again, plaintiff does not raise or discuss any alleged infirmity with the instruction, and thus her claim of instructional error is forfeited. (*County of Sacramento, supra*, 65 Cal.App.5th at p. 861.)

Under yet another separate subheading, plaintiff asserts the jury was improperly instructed on how to apply mitigation. Plaintiff asserts "there was zero explanation of mitigation and how to apply it to the various claimed damages, which varies from damage to damage." Under this subheading, plaintiff asserts she "contested the confusing instruction of mitigation." However, at the pages of the record cited, the parties discussed the verdict forms, albeit in relation to mitigation; plaintiff did not object to or seek modification of the mitigation instruction. Plaintiff does not identify any alleged error in the instruction. Plaintiff's contention is conclusory and not supported by cogent legal argument and is thus forfeited. (*County of Sacramento, supra*, 65 Cal.App.5th at p. 861.)

## B. Defense Counsel's Misconduct in Closing Argument

Under the heading addressing instructional error, plaintiff asserts that defendants failed to explain their burden of proving her failure to mitigate. Under a separate subheading, plaintiff asserts defendants' attorney committed misconduct during closing arguments by misstating the law of mitigation and its application. She claims that

9

counsel's explanation was "based on zero law," "minimizes the nuances of applying the standard to each type of damage," and was "confusing, misleading, and caused substantial errors in the verdict." Plaintiff also contends a limiting instruction should have been given, but does not indicate what such an instruction would have stated.

" 'Generally, to preserve for appeal an instance of misconduct of counsel in the presence of the jury, an objection must have been lodged at trial.' " (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 794.) Plaintiff did not object to the portion of defense counsel's closing argument that she characterizes as misconduct on appeal. In fact, plaintiff did not object to defense counsel's closing argument at all. Thus, plaintiff has forfeited her contention of defense counsel's misconduct in closing argument. And, by failing to request a limiting instruction, she forfeited any contention that such an instruction should have been given. (*People v. Valdez* (2012) 55 Cal.4th 82, 149; accord, *Dincau v. Tamayose* (1982) 131 Cal.App.3d 780, 792.)

### C. Loss of Use and "Primary Residence"

The trial court instructed the jury with CACI No. 314 as follows: "[Plaintiff] and defendants dispute the meaning of the following words in their contract: Primary residence. [¶] [Plaintiff] claims that the word 'primary residence' refers to her home at [a specified address], Redding, California. Defendants claim that the word 'primary residence' does not refer to [the same specified address], Redding, California. [Plaintiff] must prove that her interpretation is correct."

Curiously, neither party has identified for this court exactly where the term "primary residence" appears in the contract. The Loss of Use portion of the policy provided for reimbursement for fair rental value "If a loss covered under this section makes that part of the *residence premises where you reside* uninhabitable . . . ." (Italics added.) "Fair rental value," was defined in the policy as "the fair rental value of that part of the residence premises where you primarily reside less any expenses that do not

10

continue while the premises is uninhabitable. Secondary residences are covered for Additional Living Expenses only."

Plaintiff asserts the trial court improperly instructed the jury with CACI No. 314 because, when there exists an ambiguous contract term, here "primary residence," that term should be construed against the drafter. Plaintiff asserts CACI No. 314 was improper because ambiguities should have been resolved in favor of the insured, not the insurer. We disagree with plaintiff's claim of instructional error.

An appellate court reviews a claim of instructional error de novo. (*People v. Mataele* (2022) 13 Cal.5th 372, 419; accord, *Harry v. Ring the Alarm, LLC* (2019) 34 Cal.App.5th 749, 758.) " 'When an appellate court addresses a claim of jury misinstruction, it must assess the instructions as a whole, viewing the challenged instruction in context with other instructions, in order to determine if there was a reasonable likelihood the jury applied the challenged instruction in an impermissible manner.' " (*People v. Grimes* (2016) 1 Cal.5th 698, 729; accord, *Largey v. Intrastate Radiotelephone, Inc.* (1982) 136 Cal.App.3d 660, 671 [" 'It is a fundamental rule that all of the instructions must be read together and construed as a whole. [Citation.] If, so construed, they state the law fairly, the charge is proper' "].)

Here, in addition to CACI No. 314, the court instructed the jurors with CACI No. 315: "You should assume that the parties intended the words in their contract to have their usual and ordinary meaning, unless you decide that the parties intended the words to have a special meaning." The trial court also instructed the jury with CACI No. 320: "In determining the meaning of the words of the contract, you must first consider all the other instructions that I have given you. If, after considering these instructions, you still cannot agree on the meaning of the word, then you should interpret the contract against the party that drafted the disputed words or the party that caused the uncertainty."

Additionally, the parties offered extrinsic evidence in the form of expert testimony as to the meaning of the term "primary residence." (See generally *Sterling v. Taylor*

11

(2007) 40 Cal.4th 757, 767 [when ambiguous terms in a contract are disputed, "extrinsic evidence is admissible to resolve the uncertainty"; because a contract must include the essential contract terms, extrinsic evidence cannot *supply* required terms, but can be used to *explain* essential terms that were understood by parties but would otherwise be unintelligible to others].)  The plaintiff's expert testified to timing and the importance of the residence being significant -- and here the plaintiff had the insured home before the other homes and considered it her "forever home."  On the other hand, the defendants' expert disagreed and testified that the term meant "[w]here you primarily live, your main residence where you live most of the time, if not all of the time."

By reading CACI No. 314, the court correctly informed the jury how to resolve the parties' disputed meaning of the term "primary residence."  It further correctly informed the jury that, to prevail on her claim for loss of use damages, plaintiff bore the burden of proving her interpretation -- that the Redding residence was her primary residence.  (See *Chaffee v. Sorensen* (1951) 107 Cal.App.2d 284, 291 [burden of proof on plaintiff to prove every element of her case]; & CACI No. 200, also read to the jurors.)  CACI No. 315 correctly instructed the jury to assume the parties intended the words in the policy to have their usual and ordinary meaning, unless the jury decided the parties intended words to have a special meaning.  And finally, CACI No. 320 correctly informed the jury that, if, after considering all of the instructions, the jury still could not agree on the meaning of a word in a contract, the jurors "should interpret the contract against the party that drafted the disputed words or the party that caused the uncertainty."  Further synthesizing these instructions insofar as relevant here, they informed the jury that plaintiff had to prove the Redding house was her primary residence in support of her claim for loss of use damages, but that if the jurors could not agree on the meaning of the term "primary residence," they must construe it against defendants.

In her argument, plaintiff asserts that, "[w]hen a singularly drafted contract contains ambiguous term, then the ambiguity must be taken against the drafter."  The

instructions here, including CACI No. 320, instructed the jurors in that manner.  Plaintiff, in her opening brief, elides the fact that the trial court instructed the jury with CACI No. 320.  And, as defendants assert, plaintiff appears to conflate her burden of proof with the rule requiring ambiguities in a contract to be construed against the drafter.

Considering the instructions as a whole and in context, we conclude it was not reasonably likely the jury misapplied the instructions in an impermissible manner. Moreover, we assume the jurors are intelligent people and are capable of understanding and correlating the instructions given.  (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.)

### D.  Expert Testimony

The trial court instructed the jury with CACI No. 219 on expert testimony. Plaintiff asserts the trial court's instruction was incomplete and inaccurate, causing the jury to disregard expert testimony and misapply jury instructions.  According to plaintiff, a jury cannot arbitrarily reject uncontroverted expert testimony.

Plaintiff did not object to CACI No. 219 in the trial court.  Nor did she request a limiting instruction or any instruction specifying the jury was not to arbitrarily disregard expert testimony.  Where " ' "the court gives an instruction correct in law, but the party complains that it is too general, lacks clarity, or is incomplete, he must request *the additional or qualifying instruction in order to have the error reviewed*." ' "  (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1131.)  Plaintiff's failure to request any different or additional instructions means she "may not argue on appeal the trial court should have instructed differently."  (*Ibid*.)

## III

### *Rejection of Expert Testimony*

Under a heading separate from her instructional error claims, plaintiff asserts expert testimony cannot be rejected arbitrarily.  Plaintiff maintains that, while it may be

that a jury can reject expert testimony like that of any other witness, the jury cannot arbitrarily reject expert testimony, particularly uncontradicted expert testimony.

" 'As a general rule, "[p]rovided the trier of fact does not act arbitrarily, he may reject *in toto* the testimony of a witness, even though the witness is uncontradicted. [Citations.]" [Citation.]  This rule is applied equally to expert witnesses.' " (*Conservatorship of McKeown* (1994) 25 Cal.App.4th 502, 509.)

Plaintiff states that both her expert and defendants' expert testified "the Insured had personal property losses that were outstanding and that, not only could the claim be re-opened at any time, but that it was an insurer's obligation to review and process their claims, regardless of when the documentation was submitted."

What plaintiff does not do in this entire argument section of her opening brief is cite to a page in the record to support her factual claims.  We could disregard plaintiff's factual contentions entirely.  (*County of Sacramento, supra*, 65 Cal.App.5th at p. 861.)

In any event, even accepting plaintiff's premises that both experts testified consistently that plaintiff had sustained covered personal property losses (to which the parties stipulated), that a claim can be reopened at any time, and that an insurer has an obligation to review and process claims, there is nothing in the record to demonstrate that the jury rejected this testimony, let alone that it did so arbitrarily.  The jury could have accepted these representations and nonetheless determined, for a variety of reasons including failure to cooperate under the policy or failure to mitigate, that defendants were not liable on plaintiff's causes of action and that plaintiff was not entitled to compensation beyond what defendants had already paid her.  Plaintiff's contention that the jury arbitrarily disregarded uncontradicted expert testimony, and that this led to the verdicts obtained, is speculative.  Plaintiff has not satisfied her burden of demonstrating reversible error on this ground.  (See *Denham v. Superior Court, supra*, 2 Cal.3d at p. 564 [judgment is presumed correct; all "intendments and presumptions are indulged to

14

support it on matters as to which the record is silent, and error must be affirmatively shown"].)

## IV

### *Statute of Limitations and Contractual Time Limitations*

Plaintiff claims there were no issues involving the statute of limitations or contractual time limitations that would justify the jury's zero damages award. According to plaintiff, the only legitimate reason for an insurance carrier's refusal to pay or process a claim is a delay triggering the statute of limitations.

Defendants respond that plaintiff's "speculation regarding the jury's hypothetical consideration of a statutory or contractual limitations period is untethered to any evidence in the record. Nothing suggests that the jury declined to award Plaintiff damages due to statutory or contractual time limitations."

We agree with defendants.

The court informed the jury that the parties stipulated plaintiff timely filed this action and that the statute of limitations was not a matter for the jury's consideration. The trial court instructed the jury that "the attorneys for both sides have agreed that certain facts are true. This agreement is called a stipulation. No other proof is needed and you must accept those facts as true in this trial." (CACI No. 5002.) In the absence of an indication to the contrary, on appeal, we presume the jury followed the instructions given by the trial court. (*Cassim v. Allstate Ins. Co., supra*, 33 Cal.4th at p. 803.)

Plaintiff fails to identify anything in the record to establish the jury relied, impermissibly or otherwise, on any contractual time limitation. Her suggestion, in effect, that there was no other way for the jury to reach its verdicts other than the statute of limitations or contractual time limitations is conclusory. (See *County of Sacramento, supra*, 65 Cal.App.5th at p. 861.) Plaintiff has not established the jury relied on the statute of limitations in contravention of the stipulation and the trial court's instructions or that it improperly relied on a contractual limitations period.

15

# V

## *Substantial Evidence*

Plaintiff asserts the jury's verdict was in contradiction to the evidence and constituted a miscarriage of justice.  Plaintiff contends that substantial evidence does not support the jury's zero damages award which, according to plaintiff, was "not possible in the face of the evidence entered at trial."  Plaintiff emphasizes that the parties stipulated she suffered covered personal property losses.  She further emphasizes the evidence that defendants failed to review her complete 2016 personal property losses prior to closing the claim.

In reviewing for substantial evidence, "[t]he test is whether substantial evidence, even if contradicted, supports the judgment.  [Citation.]  Substantial evidence means evidence of ponderable legal significance that is reasonable, credible, and of solid value.  [Citation.]  Substantial evidence review is deferential to the factfinder." (*Gillotti v. Stewart* (2017) 11 Cal.App.5th 875, 899.)  "Under the well-established standard of review applicable to a claim that a judgment or finding is not supported by the evidence in the record, 'we must consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the judgment.  [Citations.]  [¶]  It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact.  Our authority begins and ends with a determination as to whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted, in support of the judgment. . . .  We must accept as true all evidence and all reasonable inferences from the evidence tending to establish the correctness of the trial court's findings and decision, resolving every conflict in favor of the judgment.' " (*Regalado v. Callaghan* (2016) 3 Cal.App.5th 582, 595-596.)

"An appellant challenging the sufficiency of the evidence must set forth all the relevant evidence, not just the evidence favorable to the appellant, and show how the

evidence does not support the judgment; otherwise, the contention is forfeited." (*Steele v. Youthful Offender Parole Bd.* (2008) 162 Cal.App.4th 1241, 1251.) Plaintiff's recitation of the facts is limited and presented in a light most favorable to her position. Plaintiff comes close to forfeiting her substantial evidence claims on appeal. (See *id*. at p. 1254 [in presenting limited facts solely in the light most favorable to the appellant's position, the appellant "comes perilously close to forfeiting its substantial evidence claims on appeal"].) In any event, we proceed to the merits of plaintiff's contentions.

The parties stipulated that plaintiff "suffered personal property losses that were covered under the insurance policy, but do not agree as to the amount of those personal property losses."

Plaintiff's homeowners policy with defendants included, among plaintiff's duties constituting conditions for recovery after loss of personal property, that plaintiff immediately notify defendants (and the police in case of theft) of the loss, and prepare an inventory including the quantity, description, actual cash value, and amount of the loss, including substantiating documentation. It also required plaintiff to comply with additional reasonable requests for documentation and verification and a sworn proof of loss upon request.

After plaintiff initially notified defendants of the 2012 loss, Scobba sent a document to plaintiff instructing her how to fill out a form for her claim. Scobba could not recall whether she spoke with plaintiff after that. Scobba did attempt to call plaintiff on several occasions and left her voicemails which were not returned. Scobba never received a list from plaintiff with the details of the items lost in the 2012 incident and thereafter closed the file.

Defense expert William Thomas testified that, despite what plaintiff had provided, defendants did not have the documentation they needed to process the claim following the 2012 loss. The information defendants had was too vague and did not set forth the

17

age of the property or its condition. Defendants did not receive any additional information regarding the 2012 loss until after the 2016 loss.

Constance Amos did not receive any inventory list pertaining to the 2016 claim until December 2016, almost a year after plaintiff filed the claim. In Amos's experience, that was a long time for an insured to delay in providing a personal inventory list.

In its special verdicts, the jury concluded plaintiff was not entitled to recover any additional funds and that defendants' failure to pay or delay in payment of policy benefits was not unreasonable or without proper cause.

The evidence set forth *ante* constitutes substantial evidence defendants' failure to pay any additional policy benefits beyond what it had already paid was not unreasonable or without proper cause. Based on this evidence, the jury could have concluded plaintiff failed to satisfy her duties under the policy upon which recovery was conditioned, including her duty to cooperate with defendants in advancing and processing her claims.

There was evidence defendants did not review plaintiff's full claim in 2016, which defendants' employee acknowledged as a shortcoming. Additionally, plaintiff testified that, in 2012, she believed she had provided defendants with everything necessary for her 2012 claim to move forward. However, this provided evidence to weigh against that described *ante*, and, based on its verdict, it appears the jury concluded plaintiff failed to satisfy her duties under the policy that were a condition to recovery. Under the substantial evidence test, we consider whether there is substantial evidence, even if contradicted, that supports the verdict. (*Gillotti v. Stewart, supra*, 11 Cal.App.5th at p. 899; see also *Regalado v. Callaghan, supra*, 3 Cal.App.5th at pp. 595-596.)

Plaintiff maintains that there was no dispute "that outstanding losses remained owed by [defendants], and that [defendants] closed the claim without processing the personal property lists, without issuing a proper denial." Plaintiff's characterization of the stipulation is not accurate. The parties stipulated plaintiff had sustained covered personal property losses. However, it was not undisputed she was entitled to *additional*

18

compensation beyond what defendants had already paid her or that "*outstanding* losses remained owed by" defendants.  (Italics added.)  Elsewhere, plaintiff refers to a "breach of contract stipulation that the Insured suffered a covered loss."  Again, the parties stipulated plaintiff suffered a covered loss; they did not stipulate defendants breached the contract.

We conclude that, contrary to plaintiff's contentions, substantial evidence supports the jury's verdict that plaintiff was not entitled to additional compensation for loss of personal property.

## DISPOSITION

The judgment and the postjudgment order denying plaintiff's four postverdict motions are affirmed.  Defendants shall recover their costs on appeal.  (Cal Rules of Court, rule 8.278(a)(1), (2).)

_____/s/_____
Horst, J.[*]

We concur:

_____/s/_____
Earl, P. J.

_____/s/_____
Duarte, J.

---

[*] Judge of the Placer County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19