[Crim. No. 7806. Second Dist., Div. Two. Jan. 26, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. NEVINS ANDERSON, Defendant and Appellant.

Ellery E. Cuff, Public Defender, Edward B. Olsen and James L. McCormick, Deputy Public Defenders, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

ASHBURN, J.—Defendant was found guilty of possession of heroin, Health and Safety Code section 11500. He admitted a prior felony conviction under the federal law. He appeals from the judgment and order denying motion for new trial.

On September 19, 1960, at about 9:25 p. m., police officers Hunnel and Janowicz, dressed in civilian clothes, were driving a "plain clothes car" (a 1957 Ford, eggshell color) south bound on Wilmington Street. As they approached the intersection of 115th Street and Wilmington, with their attention drawn to another person, they saw two Negroes standing on the southwest corner of the intersection. As the police stopped the car south of the intersection these two persons moved away from the corner and started running west on 115th Street. Both were male Negroes; no other "mental impression in the way of identification" was obtained at that time by the officers. Officer Janowicz left the vehicle and gave pursuit. He testified that after he got out of the vehicle and reached the corner he saw one of the men running through a gate and south into the side yard of the house on the corner; the other was running west, about half way between the gate and the officer. He pursued the latter person who ran into a back yard at 1832 East 115th Street where he was apprehended.

In the meantime, Officer Hunnel parked the car and went looking for his partner. He saw no one and started checking between the buildings. Near the first, the corner house, a

person stood in the backyard whom Hunnel identified as appellant. It was dark; there were no yard lights and the only illumination was from the street lights. He talked to appellant for about 30 seconds. Hunnel asked him if he had seen anyone go by there and he said "No." He was then asked if he had seen anyone running and he said "Yes, there was two guys running down the street with another guy after them." He told Hunnel they had run westward down 115th Street, and had run in between the buildings there, five or six houses down the street. Hunnel immediately went to that location where he found Officer Janowicz coming from between the buildings with one of the men that had been standing on the corner. Officer Janowicz arrested this person, one Joseph Miller, and took him to the police vehicle.

Officer Hunnel returned to the location where he first talked to appellant, in the back yard of the corner house; this was seven or eight minutes after talking with appellant. Appellant was not there, but Hunnel found, at the spot where appellant had been standing urinating, a multicolored balloon containing a quantity of white capsules, later shown to contain a narcotic; it was lying on the wet spot and was not wet on top. He then searched the immediate area of the pool halls, beer bars and cafes looking for the appellant but was unable to find him. This took about three minutes. He returned to the police vehicle and saw appellant crossing Wilmington, from west to east, behind the parked police car; he called to the appellant and started in his direction. "The defendant turned toward me and then the other way, took about three fast steps and then slowed down and then walked on across the street and stopped when I hollered to him again. I caught up with him." Hunnel asked appellant "where he had been since I talked to him behind the building. He asked me what I meant. And I said 'I talked to you about ten minutes ago maybe over there behind the house there on the corner.' He said, 'No, this is the first time I have been down here, that is, tonight.' I said, 'Well, I talked to you over there and you dropped a package on me, so you are under arrest.' 'What do you mean?' [he] said, 'Well, you are under arrest; that is all I will tell you right now.' I searched him for weapons and so forth." The officer removed from appellant's left shirt pocket a capsule which, he testified, "had a small residue in it but the capsule itself was clear." "I asked him what it was, how it got there. He said he didn't know. I asked him if he used the stuff. He said he had used it. I then asked him

when was the last time and he said . . .'Wednesday evening' '' (five days previously). Based upon his 11 years' experience as a policeman Officer Janowicz testified, over objection, that in his opinion appellant was under the influence of narcotics the night of the arrest. Apparently his observation of appellant took place at or about the time of the arrest. There was no warrant for arrest or search. Officer Hunnel testified that the arrest of appellant was based upon his finding of the balloon in the back yard of the corner house.

By way of summary and as background to discussion of appellant's contentions we point to the following facts which afforded reasonable ground for arrest and search of appellant and his companion Miller. Though no man pursued they both began to run down the street when two men in plain clothes and a plain automobile stopped near them at a street intersection; each of the two ran into the yard of a house on a dark street; appellant was overtaken in the first available yard, where he stood urinating (from fright or as an evidence of equanimity, we do not know); Officer Hunnel talked with him for about 30 seconds and had ample time to see his face though it was dark; he gave the officer correct information about the flight of a man pursued by an officer, a man later identified as his own companion Miller; as the officer followed them appellant disappeared. The officer, after finding Janowicz with Miller in custody, spent some three minutes searching for appellant in bars and pool halls and then returned to the spot where they had talked; there he found the balloon containing the narcotics lying in the wet spot but dry on top, thus indicating it had been dropped after the evacuation; appellant not being present at that time, Hunnel returned to the police car and soon saw him crossing Wilmington Street behind that car; he called appellant and started toward him; ''[t]he defendant turned toward me and then the other way, took about three fast steps and then slowed down and then walked on across the street and stopped when I hollered to him again. I caught up with him.'' Defendant denied having talked to the officer on the previous occasion. He was then arrested and searched, his shirt pocket yielding the capsule with heroin debris inside.

Appellant's car key was taken from him, a General Motors key. He said it was the key to a 1949 Pontiac which he had junked two or three weeks prior to that conversation. Parked immediately behind Miller's Studebaker car was a 1950 Chevrolet which defendant's key fit, opening the locked door and

starting the ignition. It did not fit or work any one of several other General Motors cars in the vicinity,—two Buicks and an Oldsmobile. ▆▆▆ The court asserted that this was no evidence because "[a]ny one of a number of General Motor[s] car keys is interchangeable"—a fact which, if it be a fact, is not the subject of such common knowledge as to make it a matter of judicial notice. After considerable discussion outside the presence of the jury a pending objection to the question whether the officer had tried the keys in the 1950 Chevrolet was sustained, but the evidence theretofore given was not stricken so it remains a part of the showing upon reasonable cause, the matter we are now discussing. (See *People* v. *Valencia,* 30 Cal.App.2d 126, 128-129 [86 P.2d 122] ; *People* v. *Olds,* 154 Cal.App.2d 78, 83-84 [315 P.2d 881].)

▆▆▆ Appellant was arrested and searched and his left shirt pocket yielded a capsule which had in it a few milligrams of white powder or debris later found to be heroin. After the capsule had been taken from his pocket defendant was asked by the officer whether he "used the stuff"; defendant said he had used it, did not recall when he had last done so, and then said it was Wednesday evening. Officer Janowicz, after qualifying to do so, expressed the opinion that defendant was at that time under the influence of a narcotic.

The court ruled that the officers had reasonable cause for an arrest and a search. This was based upon evidence somewhat conflicting, but this question is for the judge alone (*People* v. *Gorg,* 45 Cal.2d 776, 780-781 [291 P.2d 469]), and his ruling where the evidence is conflicting is conclusive unless it shows as matter of law that there was no reasonable probable cause. (*People* v. *Muniz,* 172 Cal.App.2d 688, 691 [342 P.2d 53].) We hold that the ruling that the officers had reasonable cause for arrest and search is correct.

▆▆▆ 1. Appellant's major contention is that he was deprived of his right to a fair and impartial jury trial in violation of his constitutional rights. It is claimed that the trial judge committed prejudicial error in advising the jury as to his decision regarding the right of Officer Hunnel to arrest and search appellant.

Throughout the trial the judge labored with a vociferous dislike of the ruling in *People* v. *Gorg, supra,* 45 Cal.2d 776, which he conceives to be a partial denial of the right to jury trial. When the time came for instructions to the jury the judge reacted in the other direction and conceived it to be his duty to explain the rule of *People* v. *Gorg* to the jury—a

wholly unnecessary and inadvisable procedure because of its tendency to confuse. The attorneys' arguments to the jury are not in the record but they seem to be the springboard for the remarks of the court of which appellant complains.

As soon as the arguments were finished the court addressed the jurors as follows: "Ladies and gentlemen, before I instruct you, I want to comment just briefly. Both Mr. Rose and Mr. Olsen have spoken to you concerning constitutional rights and civil rights. If I fail to make some comment on the question, you might ask yourselves, 'Well, fine, I am for constitutional rights and civil rights but what does that have to do with me in this case?' The truth is, nothing. You don't have to concern yourselves with constitutional rights or civil right[s]. That is my problem. And that was and is a very serious problem in this case.

"The officer arrested the defendant in this case and when he arrested him, he searched him. Whether or not he had a right to search him depends upon whether or not that was a valid arrest. Whether or not that was a valid arrest depends upon whether or not the officer had reasonable grounds to believe the defendant committed a felony. In other words, did the officer have reasonable grounds to conclude that this was the defendant that he saw in the back yard and that the heroin in question was possessed by this defendant. Did the officer have reasonable grounds so to believe? I concluded that he did. Right or wrong, that is my problem. It is not an easy question to answer. I don't pretend that it is. I don't pretend that I or any other judge am always right in making that decision, but I tell you without any equivocation at all: Right or wrong, logical or illogical, it is my problem and my decision and one that you are not to review or to consider.

"Now, when you decide whether or not it has been proven beyond a reasonable doubt that the defendant was behind the house and that he possessed the heroin, that is quite a different question. The standard is whether or not it has been proven to you beyond a reasonable doubt. You might well conclude, as I have, that the officer had reasonable grounds to believe that the defendant was behind the house and had possessed the heroin and you, in assuming and discharging your responsibilities, might conclude that it has not been proven beyond a reasonable doubt that he was the man behind the house and possessing the heroin. We have two different jobs, two different responsibilities, and there are two different standards. In my case: Did the officer have reasonable grounds so to believe?

In your case: Has it been proven beyond a reasonable doubt? Do you see the distinction? Leave the question of constitutional protection, civil rights, and so forth, to me. We will all hope that it is in good hands. Whether it is or not, there is nothing either you or I can do about it.

"Your job is simple, not easy, but simple. All you have to do is decide whom to believe, don't you? 99% of this case revolved around that question. The officer says, 'I took this out of the defendant's pocket.' The defendant says that he didn't. The officer says, 'I saw him behind the house.' The defendant says that he didn't. The defendant is supported by other witnesses in that regard. All you have to do is decide whom to believe. That is simple, but not easy."

The jury retired to the jury room at 9:25 a. m. At 3 p. m. the following occurred: "THE COURT: Ladies and gentlemen, you have asked if there were any other preliminary instructions other than those of the written instructions. Yes, I had made some mention in the nature of instructions that were not written, so we will ask the reporter to read those to you at this time." Whereupon the reporter read in their entirety the above-quoted comments of the trial judge. Appellant made no objection to the court's remarks although they were given twice. It is agreed that the question of probable cause to make an arrest is one for the determination of the trial judge outside the presence of the jury.

Appellant does not contend, upon this appeal, that the question of probable cause was incorrectly decided, or that there was an illegal search and seizure. Nor is it contended that any of the evidence was inadmissible (i.e., hearsay) or that any of the evidence upon which probable cause was based was prejudicial to him. This is a situation where the same evidence which establishes probable cause goes to the question of guilt. The contention relates only to the effect of the judge's comments or oral instructions.

Though the court's remarks appear to have been given through an excess of zeal to have the jury understand their own proper function, we have concluded that they do not constitute grievous error or an invasion of the jury's proper functions. The court tells them there is no question of civil rights or constitutional rights for them to solve; that, so far as that matter has entered into the case, he has decided it and they are not free to review his ruling; that the question whether the officers had reasonable grounds for arrest and search was one for the judge and he had decided it in the

affirmative; that, so far as the jurors were concerned, the question of identity of the man with whom the officer had talked behind the house was one which they would have to decide under the reasonable doubt rule; that they might not agree with the judge; but the question was one for them to decide under the reasonable doubt rule and "all you have to do is decide whom to believe. That is simple, but not easy." This is plain language and the jurors are presumed to have understood and followed it. (*Zuckerman* v. *Underwriters at Lloyd's, London*, 42 Cal.2d 460, 478-479 [267 P.2d 777].) There was no necessity for such a discussion with the jury, but if it be assumed that there was, the first paragraph of the above-quoted matter was all that was appropriate.

Careful consideration has convinced us that these remarks of the trial judge, though unfortunate, were not prejudicially erroneous.

2. Appellant further argues that the court, "by its extensive cross-examination of defense witness Eddie Brown, created in the minds of the jurors the impression that the court favored the case of the People." Appellant's defense was that he was not the person the officer had seen and interrogated in the back yard. Eddie Brown, a defense witness, then testified that he had had a conversation at that spot with a Caucasian man about 9:15 p. m.; that there was no one else around. Upon cross-examination this witness fixed the place where he talked to this man at precisely the same spot previously fixed by Officer Hunnel as the place where he saw appellant. He also testified that he had been visiting a friend, Magoo, who rented a room in the corner house; that he left the house by the rear door and saw this man who said he was a police officer and asked him if he had seen another officer chasing someone down the sidewalk. The questioning by the court which took place upon the close of this cross-examination was without objection by the defense and appears to have been a proper attempt to get at the truth. (See *People* v. *Rigney*, 55 Cal.2d 236, 241, 243-244 [10 Cal.Rptr. 625, 359 P.2d 23]; *People* v. *Corrigan*, 48 Cal.2d 551, 559 [310 P.2d 953].)

The questioning of this witness took place at the commencement of the second day of trial. Upon redirect, he stated that he was not in the courtroom the preceding day. Upon the completion of redirect: "THE COURT: Eddie, you know the officers have testified that the man they saw in the back yard is Nevins Anderson, you know that, don't you? THE WITNESS:

No, I don't know that." The court overruled an objection that "it calls for a conclusion and would be outside the scope of the direct examination and contrary to any knowledge that this witness would obtain in the course of the trial"—stating "[f]or the record, I will indicate that this goes to the witness's credibility." The court continued to question the witness along this line and the witness denied knowing it was ever claimed by the officer, or that the officer had testified that it was appellant to whom he had talked in the back yard. (Later, the court expressed to counsel, outside the presence of the jury, that he did not believe this witness.)

Appellant claims "[t]he jury could not fail to get the impression that the court disbelieved this witness." He relies upon *People* v. *Robinson*, 179 Cal.App.2d 624 [4 Cal.Rptr. 50], which quotes from *People* v. *Mahoney*, 201 Cal. 618, 626-627 [258 P. 607] : " 'Jurors rely with great confidence on the fairness of judges, and upon the correctness of their views expressed during trials. For this reason, and too strong emphasis cannot be laid on the admonition, a judge should be careful not to throw the weight of his judicial position into a case, either for or against the defendant. It is unnecessary to cite the cases bearing on this subject. It is a fundamental principle underlying our jurisprudence.' " The questioning by the court herein does not appear to be of the type or to the extent present in the two cited cases; rather, it appears to be permissible within *People* v. *Rigney, supra,* 55 Cal.2d 236, 243-244.

3. It is argued that the evidence, as a matter of law, was insufficient to warrant the jury in finding beyond a reasonable doubt that appellant had possession of the narcotics found behind the house. The principal claim is insufficiency of identification, which presents only a question of credibility of the witnesses and the weight to be given the evidence. If the police officer's testimony was believed, it was appellant whom he saw there. Relevant to the ultimate question of possession is the officer's testimony that several minutes later the narcotics were found at that precise spot; appellant's admission of a prior narcotics felony conviction and his admission of recent use of heroin; and the finding of the capsule upon appellant's person, as well as the opinion that he was under the influence of an opiate.

4. Appellant claims that there is insufficient evidence to show that appellant had possession of the narcotics found in his shirt pocket. The prosecution's forensic chemist testified

that this capsule contained a residue of heroin, "possibly about five milligrams, maybe a little less" (which he said would be about 5/1000ths of a gram—and that it takes about 28.4 grams to make one ounce) ; that the capsule was "substantially empty." Appellant argues that "[w]hen a substance is so small as to be beyond any practical use . . . it would seem that a more reasonable view would be to hold that such an amount is too small to knowingly be in the possession of anyone" and contends that *People* v. *Cole,* 113 Cal.App.2d 253, 262 [248 P.2d 141] is controlling. There is language in the *Cole* case to the effect that it is improbable that one would knowingly possess or transport a "single flake in the barber's kit, the 12 scattered seeds and the trace scraped from an apparently empty can all found in the automobile"; however, it does not hold that as a matter of law there cannot be possession of such "insignificant fragments." It held that an erroneous instruction to the effect that the evidence need not show that defendant knew the objects he possessed were narcotics, was prejudicial when such is the state of the evidence concerning the narcotics. In *People* v. *Hyden,* 118 Cal.App. 2d 744 [258 P.2d 1018], the court distinguishes the *Cole* case, and holds that it is error to rule as a matter of law that the amount of morphine, standing alone, is conclusive. At page 747: "Not only was the decision in the *Cole* case based upon several considerations other than the insignificant fragments found in the defendant's car, but there is considerable difference between morphine and marijuana with respect to quantities and effects. There was no evidence as to the relative effect of two milligrams of morphine, or as to what amount of morphine would be sufficient to be considered of any significance, and it would seem that that matter is not one concerning which judicial notice could properly be taken.

"Whether or not that quantity was sufficient not only required evidence, but was a matter of defense. Moreover, other elements here appeared which would materially affect the significance to be attributed to even a small amount of morphine."

In the instant case there is no evidence to support defense counsel's statement that "it would be impractical, if not impossible, to make any real use of the five milligrams or less involved in this case." Also, there were other elements which the jury could consider while giving significance to the small quantity involved. The cases hold that the statute does not require the possession of any specific quantity of narcotics.

(*People* v. *Salas,* 17 Cal.App.2d 75, 78 [61 P.2d 771] ; *People* v. *Jones,* 113 Cal.App.2d 567, 569-570 [248 P.2d 771] ; *People* v. *One 1959 Plymouth Sedan,* 186 Cal.App.2d 871, 874 [9 Cal.Rptr. 104].)

5. Finally appellant argues that the verdict is uncertain and the court erred in refusing to submit to the jury the following special verdict, offered pursuant to Penal Code, sections 1150-1155 :

"We, the Jury, find that the defendant NEVINS ANDERSON was" or in the alternative—"was not the person to whom Officer Hunnel talked in the rear yárd of the premises on the corner at 115th Street and Wilmington Avenue." Appellant claims, upon the authority of *People* v. *Lopez,* 169 Cal.App.2d 344 [337 P.2d 570], and *People* v. *Mandell,* 90 Cal.App.2d 93 [202 P.2d 348], that possession of the heroin in the balloon and of that in the capsule would be two separate offenses, and that he was entitled to know upon which particular exhibit of heroin the jurors based their verdict; that unless all 12 jurors agree upon a specific charge, the verdict is insufficient.

Penal Code, section 1150 provides: "The jury must render a general verdict, except that in a superior court, when they are in doubt as to the legal effect of the facts proved, they may, except upon a trial for libel, find a special verdict."

*People* v. *Thompson,* 144 Cal.App.2d Supp. 854, 859 [301 P.2d 313] : "Where, as in this case, the proof of either of two facts constitutes the offense charged, the jury should be instructed that all 12 must agree that one fact or the other is established; it will not do for part of them to agree on the existence of one fact, the rest of them concluding that the other fact alone was established. [Citations.]" To same effect, see *People* v. *Williams,* 133 Cal. 165, 169 [63 P. 323] ; *People* v. *Dutra,* 75 Cal.App.2d 311, 321-322 [171 P.2d 41] ; *People* v. *Hatch,* 13 Cal.App. 521, 535-536 [109 P. 1097] ; *People* v. *Scofield,* 203 Cal. 703, 710 [265 P. 914] ; *People* v. *McMillan,* 45 Cal.App.2d Supp. 821, 830 [114 P.2d 440]. In the cited cases the jury was erroneously instructed in effect that they were "free to convict on this count although the jurors may not have been in agreement with respect to the commission of any particular act or omission, as being calculated to cause or tend to cause the result in question" (*People* v. *Dutra, supra,* p. 322).

We do not know what instructions were given, and we cannot assume that an erroneous instruction such as was involved in the cited cases was given, or, on the other hand,

522

that the court failed to properly instruct as indicated in *People* v. *Thompson, supra.* It was not necessary to submit the special verdict in this case.

Judgment and order affirmed.

Fox, P. J., and Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 21, 1962.