[Crim. No. 7972.    Second Dist., Div. Two.    Mar. 16, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. NICK MARICH, Defendant and Appellant.

John F. Sheffield and Harold I. Cherness for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Mario A. Roberti, Deputy Attorney General, for Plaintiff and Respondent.

ASHBURN, J.—Convicted by a jury upon two counts of unlawful possession of heroin (Health & Saf. Code, § 11500) on February 3, 1961, and March 22, 1961, respectively, defendant appeals from the judgment. As to Count I his attorneys argue insufficiency of the evidence and as to Count II unlawful search and seizure.

Count I. The burden of the argument is that the quantity of narcotic found in defendant's possession was so small that it should be disregarded. Counsel say in their brief: "[I]t is defendant's contention that a minimum amount of narcotics must be in the defendant's possession in

order to be in violation of said section. . . . It is submitted that a Rule of Thumb to be followed in cases of this type requires that there be at least a minimum amount of narcotics, to-wit: that the amount of narcotics which must be shown to constitute violation of 11500 of the Health and Safety Code should be that amount which after testing by the chemist would leave over and above that test a sufficient amount remaining so that if defendant or any other agency should seek to test these same narcotics chargeable to the defendant, that there be enough for such a test over and above that amount used by the chemist testifying in such a case.'' No authority is cited in support of these propositions and the cases are to the contrary.

Armed with a search warrant, police officers went to appellant's apartment on February 3, 1961. Upon observing numerous puncture wounds on appellant's left hand, Officer O'Neill placed him under arrest for narcotic addiction. A search was then made of appellant's bedroom where the officers found in his shoe an eyedropper, rubber bulb, piece of string around the bulb, piece of cotton, a hypodermic needle and a cigarette package. On a table they found a piece of paper on which was a brown stain and which was folded in a manner indicating that at one time it was used as a ''bindle,'' i.e., a container for heroin. They also found a partially smoked marijuana cigarette in a vacuum cleaner, some dexamyl, amphetamine, and seconal; and a pipe containing what appeared to be marijuana. Asked, ''[i]s this your fit, Nick?'' defendant said, ''Yes, it is.'' The piece of cotton and the folded paper are the significant items.

The People's expert witness, a forensic chemist, testified that he examined these items on February 27th. He noted ''several powdery fragments present in the folds of the paper.'' He stated that ''[i]n reference to the piece of dirty cotton I found that that particular piece of dirty cotton had a residue inside the cotton and on the cotton and as a result of a series of chemical examinations, it is my opinion that this residue contains Heroin.'' It was likewise his opinion that the power residue found in the folds of the paper contained heroin. ''Q. At the present time as the paper sits before you on the witness stand, is there still any of that residue left in the paper? A. I do not see any of it. Q. Is it necessary for you to use all of it in the examination, is that correct? A. I believe practically all of it was used—utilized in the course of the chemical analysis.'' ''Q. And in respect to

the cotton . . . is there any of the residue left in it at the present time as you look at it there? A. There may be residue left. As I recall the piece of cotton was larger than it is now. I cut off a piece of cotton and conducted certain chemical tests upon these pieces of cotton. Q. Is there any residue visible to you just right now on the cotton. . . . A. No, I would say that there is no powder residue as such is visible to the naked eye. However, I am not saying that it is not there." He testified that there was a sufficient amount so that a test conducted to determine the presence of heroin would have reliable results. Also that "it would be possible for the residue which was present in the cotton and the residue which was present in the folded piece of white paper could be utilizable or used by a person wishing to inject the remains that were present there. It's a possibility."

It is unlawful under section 11500 to possess "*any* narcotic other than marijuana except upon the written prescription of a physician. . . ." (See *People* v. *Salas,* 17 Cal.App.2d 75, 78 [61 P.2d 771].) ■■ We recently held, in *People* v. *Anderson,* 199 Cal.App.2d 510, 520-521 [18 Cal.Rptr. 793], that "[t]he cases hold that the statute does not require the possession of any specific quantity of narcotics. (*People* v. *Salas,* 17 Cal.App.2d 75, 78 [61 P.2d 771]; *People* v. *Jones,* 113 Cal.App.2d 567, 569-570 [248 P.2d 771]; *People* v. *One 1959 Plymouth Sedan,* 186 Cal.App.2d 871, 874 [9 Cal.Rptr. 104].)"

Appellant does not dispute the finding of the expert witness that the powder contained heroin. Nor does he claim that he ever requested and was denied the right to have the substance tested by a defense chemist. (Cf. *People* v. *Washington,* 163 Cal.App.2d 833, 843 [330 P.2d 67].) The fact that at the time of trial no substance was visible to the naked eye would not be fatal to the People's case. ■■ *People* v. *Anderson,* 87 Cal.App.2d 857, 861 [197 P.2d 839]: "Whenever an object, cognizable by the senses, is relevant to an issue in a cause, such object may be exhibited to the trier of fact or its existence, situation and character may be proved by witnesses. (Code Civ. Proc., § 1954.) In order to sustain a conviction predicated upon the use of a material object in the commission of a crime it is not necessary that such object itself be introduced in evidence." *People* v. *Shafer,* 101 Cal. App.2d 54, 59 [224 P.2d 778]: "It is contended that appellant was denied due process of law in that he was not allowed

to have his own chemist test the substance contained in the capsules. There is no authority for such contention, so long as he is confronted by the witnesses against him. The character of tests applied by the police chemist to the powder was described by him on the witness stand. The court was by no legal doctrine or rule inhibited from believing the chemist's testimony that the substance was heroin. [Citation.] In view of such testimony the presence of the capsules in court was not essential to a fair trial.''

*People* v. *Candalaria,* 121 Cal.App.2d 686, 689 [264 P.2d 71] : ''In support of his argument that the corpus delicti was not established, defendant insists it was not shown that the substance he allegedly furnished Rosamond was heroin. Ordinarily, the character of such substance is proved by a trained expert who has made a chemical analysis thereof. Here no such proof was offered because none of the powder was available for analysis. This, however, is not fatal to the People's case for the corpus delicti may be proved by circumstantial evidence.''

*People* v. *Tipton,* 124 Cal.App.2d 213, 216 [268 P.2d 196] : ''The next contention of appellants is that the corpus delicti was not proved in that no heroin was produced at the trial. It is pointed out that an essential element of the four narcotic charges was proof that the substance furnished the minor was a narcotic, and it is contended, such proof can only be made by the introduction of the narcotic into evidence and its identification by an expert. The point is without merit. The corpus delicti in any case, including a narcotic case, may be proved by circumstantial evidence. (*People* v. *Corrales,* 34 Cal.2d 426 [210 P.2d 843] ; *People* v. *Ives,* 17 Cal.2d 459 [110 P.2d 408] ; *People* v. *Mehaffey,* 32 Cal.2d 535 [197 P.2d 12].) The prosecution need not physically produce the narcotic. It may prove that the substance was a narcotic by the testimony of the user and by the testimony of a doctor that, in his opinion, the substance used was a narcotic. This precise point was so decided in the recent case of *People* v. *Candalaria,* 121 Cal.App.2d 686 [264 P.2d 71]. The evidence here meets all the tests laid down in that case.''

The claim of insufficiency of evidence to sustain the verdict of guilty on Count I cannot prevail.

Count II. The contention here presented is that a search made in the night of March 21-22 was without probable cause.

The evidence favorable to respondent's case, which we must

accept for present purposes, shows the contrary. On February 3, the occasion of Count I, the police officers had a search warrant and found the narcotics and paraphernalia in execution of it. Defendant was at that time arrested first for addiction and then for possession. He later admitted that he had been addicted to the use of heroin for about four years. Other persons in the apartment also bore the evidence of addiction and were arrested. One of them was Shirley Netkin. On March 19th she had told Officer O'Neill that appellant still was using heroin; that she was also doing this and was going to a hospital in an attempt to cure herself. In the afternoon of March 21st Shirley's mother telephoned Officer Berman, saying that through a listening device installed in her residence she had heard a conversation between Shirley and defendant whose voice she recognized; that Shirley told defendant she was going to a hospital the next day for treatment; he said, " 'You are crazy to go to the hospital, they can't help you, and don't trust the cops' "; he also asked her on several occasions during the conversation to meet him at a certain intersection, which was about three blocks from the Netkin residence; that she should crawl out of her bedroom window at 3 in the morning, meet him and he would have something for her,—which doubtless meant heroin. Officer Berman had had prior conversations with Mrs. Netkin concerning her daughter's addiction and had found her statements to be truthful. The officers put appellant's apartment under surveillance on the evening of the 21st. When they ascertained that defendant was at home, four of them proceeded to the apartment at about 12:05 a. m. of March 22d. Deputy O'Neill knocked on the door and identified himself as a police officer. He received no response but heard sounds of movement from within. He forced an entry into the apartment. Upon entering he saw defendant and observed signs of narcotics usage on his left hand; he was also under the influence of a narcotic and was placed under arrest. Deputy Berman searched appellant and removed from his shirt pocket a capsule containing a brownish powder, later identified as heroin, the subject of Count II. The officers had no arrest warrant or search warrant at the time of this arrest.

Appellant argues that this was an unlawful search and seizure; that it could not be based on information from Mrs. Netkin because she was "not known from past experience to have been a source of tested reliable information"; that

there was ample time to obtain a search warrant before this entrance of March 22d.

It appears that Mrs. Netkin was not an anonymous informer and that previous experience had shown Officer Berman that she was truthful. Moreover, the information received from her was but part of the basis for the officers' belief that reasonable cause for defendant's arrest then existed, and this determination on their part was amply justified. (*People* v. *Robarge,* 151 Cal.App.2d 660, 667 [312 P.2d 70]; *People* v. *Hollins,* 173 Cal.App.2d 88, 93 [343 P.2d 174]; *People* v. *Wickliff,* 144 Cal.App.2d 207, 212 [300 P.2d 749].)

Failure to obtain a warrant has no significance in this case. (*People* v. *Sayles,* 140 Cal.App.2d 657, 660 [295 P.2d 579]; *People* v. *Montano,* 184 Cal.App.2d 199, 205 [7 Cal.Rptr. 307]; *People* v. *Dupee,* 151 Cal.App.2d 364, 367 [311 P.2d 568].)

There was no unlawful search or seizure here.

Judgment affirmed.

Fox, P. J., and Herndon, J., concurred.