[Crim. No. 8394.   Second Dist., Div. Two.   Jan. 21, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT NALON COLLINS, Defendant and Appellant.

Robert Nalon Collins, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

FOX, P. J.—Defendant was convicted of violating section 11500, Health and Safety Code (possession of heroin). He has appealed from the judgment.

Narcotic Agent Diaz, accompanied by Agent Pizzo, went to a hotel at 148 South Figueroa Street in Los Angeles to make a narcotics investigation. They had been informed by Agent Velasquez that defendant Collins, who lived there, was engaged in narcotics activity. The manager of the hotel informed the officers that Collins lived in room 409; that he was not in his room but was visiting a friend—a Mr. Nash—in Room 215. The officers proceeded to Room 215. Officer Diaz knocked on the door. Nash opened the door. The officers identified themselves as "police officers." Diaz "asked if Mr. Collins [defendant] was there." Nash "stepped aside" and replied, "Yes, right over there." While still outside the door Diaz observed defendant near a table with a hypodermic needle and some paper in his left hand. The officer formed the opinion that defendant was either preparing to take an injection or was cleaning up the outfit after having taken an injection. The officer entered immediately, "grabbed the defendant's left hand and told him he was under arrest. The defendant struggled a short while and then relaxed." Upon opening his hand the hypodermic outfit again came into view along with an eyedropper. A spoon with wet cotton in it was on the table. This indicated to the officer that defendant had just had a "fix" with this outfit. The officer who was experienced in detecting heroin made a field test of a portion of the cotton that was in the spoon with a substance for that purpose

that he had on his person and determined that it contained heroin. The residue in the spoon also proved to be heroin. It was stipulated that "the contents of the spoon are heroin."

Defendant admitted the outfit was his. In response to an inquiry as to how much he had paid for the narcotics he replied: "I got a real bargain; I got $8.00 worth for $4.00." Defendant denied having any more narcotics in the room.

The officers had neither a warrant for defendant's arrest nor a search warrant.

Defendant did not testify and did not offer any evidence in his behalf.

Defendant's complaints fall into three categories: (1) The officers were guilty of an illegal search and seizure; (2) There was an insufficient quantity of heroin to sustain the conviction; and (3) Agent Diaz gave false evidence against him. We find no merit in any of these contentions.

As to defendant's first point it does not appear that there was anything illegal in what the officers did. ■ It is not unreasonable for officers to seek interviews with suspects at home or elsewhere. (*People* v. *Martin,* 45 Cal.2d 755, 761 [290 P.2d 855]; *People* v. *Baca,* 198 Cal.App.2d 391, 395 [17 Cal.Rptr. 779]; *People* v. *Corrao,* 201 Cal.App.2d 848, 851 [20 Cal.Rptr. 492].) ■ When the officer knocked on the door, Nash, who lived there, opened it. Diaz identified himself and his partner as "police officers." Diaz inquired whether defendant was there. Nash stepped aside and said, "Yes, right over there." Through the open door Diaz observed defendant with a hypodermic needle in his hand. With the officers' training and experience in narcotics activities this was an adequate basis for a reasonable suspicion that defendant was then engaged in some illegal relationship with contraband. The officer was therefore justified in stepping forward and grabbing the hand in which defendant held the hypodermic needle, and in placing him under arrest. (*People* v. *Torres,* 56 Cal.2d 864, 867 [17 Cal.Rptr. 495, 366 P.2d 823]; *People* v. *Reyes,* 206 Cal.App.2d 337, 340-341 [23 Cal.Rptr. 705].) ■ In this connection it must be remembered that this was Nash's room, not defendant's, and that when the officer inquired whether defendant was there, Nash not only said, "Yes, right over there" but he also "stepped aside", thus extending an implied invitation to the officer to enter. Since it was Nash's room, it was his privilege, not defendant's to extend such invitation. Thus the officers entered with per-

mission of the person who occupied the room. In such circumstances there is no basis for a claim that the officers violated any of defendant's constitutional rights relative to an unreasonable search and seizure of contraband.

Defendant's contention that there was an insufficient quantity of heroin to sustain the conviction is adequately answered by the provisions of the statute and *People* v. *Anderson,* 199 Cal.App.2d 510, 519-520 [18 Cal.Rptr. 793]; and *People* v. *Marich,* 201 Cal.App.2d 462, 464 [19 Cal.Rptr. 909]. Section 11500 of the Health and Safety Code makes it unlawful to possess *"any* narcotic other than marijuana except upon the written prescription of a physician, . . ." (Emphasis added.) (See *People* v. *Salas,* 17 Cal.App.2d 75, 78 [61 P.2d 771].) It will be recalled that it was stipulated at the trial that the contents of the spoon was heroin. Thus the requirement of the statute was met for " [t]he cases hold that the statute does not require the possession of any specific quantity of narcotics." (*People* v. *Anderson, supra,* p. 520.) In *Anderson* there was about 5/1000ths of a gram; in *Marich* practically all of the visible powdery fragments found on the paper and cotton had been utilized in the course of a chemical analysis which resulted in the witness' opinion that the powdery residue contained heroin. In each of these cases the defendant's conviction of illegal possession of heroin was sustained.

In answer to defendant's contention that Officer Diaz gave false evidence against him, it should be pointed out that it is the responsibility of the trial judge to pass upon the credibility of the witnesses and to determine the weight to which their testimony is entitled. The trial court's determination of where the truth lies is binding on this court. (*People* v. *Frankfort,* 114 Cal.App.2d 680, 692 [251 P.2d 401].) In this connection it is significant that defendant did not take the witness stand and did not offer any evidence. There were matters peculiarly within his own knowledge about which he could have testified or explained if he had felt that the officer did not give the court a full and true account of what took place. In such a situation the observation of this court in *People* v. *Smith,* 113 Cal.App.2d 416 [248 P.2d 444], at page 419, is apposite: ". . . the defendant failed to avail himself of an opportunity to explain or deny a number of incriminating circumstances about which he could reasonably be expected to know. The court was entitled to consider his failure to do this 'as tending to indicate the

truth of such evidence and as indicating that among the inferences that may be drawn therefrom, those unfavorable to the defendant are the more probable.' (*People* v. *Adamson,* 27 Cal.2d 478 [165 P.2d 3].)''

Judgment is affirmed.

Herndon, J., concurred.