[Crim. No. 239. Fifth Dist. Nov. 2, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. FREDERICK GEORGE THOMAS, Defendant and Appellant.

J. M. Lopes, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse, John L. Giordano and Nelson P. Kempsky, Deputy Attorneys General, for Plaintiff and Respondent.

CONLEY, P. J.—The information accused the defendant of ". . . the crime of Felony, to wit: Violation of Section 11530 of the Health and Safety Code—Illegal possession of marijuana committed as follows: "The said FREDERICK GEORGE THOMAS on or about the 29th day of June, A.D. 1965, at the County of Tulare, State of California, and before the filing of this Information, did willfully, unlawfully and feloniously have in his possession marijuana."

An amended information repeated the charge and, in addition, accused him of a prior conviction of possession of marijuana on or about the 8th day of September 1964, in Tulare County. At arraignment, the defendant entered a plea of not guilty, but admitted the prior felony conviction. At the same time, the defendant and his counsel waived a jury trial, and, in due course, the case proceeded before the court sitting without a jury; at the conclusion of the trial, the court found ". . . that there is sufficient evidence that the Defendant is guilty as charged," and referred the matter to the probation officer. Probation and a motion for new trial were denied, and the defendant was committed to prison.

One undercover agent, Richard F. Walley of the Bureau of Narcotics Enforcement of California, went to 1731 South "K" Street in Tulare, the apartment residence of Marion Owings, to attempt to make a purchase of marijuana in the line of duty. When Walley entered the apartment, he saw the appellant, who was introduced as "Fred," seated at a table. Walley asked Owings if he had "a pound of marijuana to sell," and Owings said that he did not have any. Walley then asked if Owings could "trip" for a pound (i.e. go some other place to buy it) ; Owings answered, "No."

Walley testified that Owings then asked the defendant, "Do you think there is quite a pound in that sack?" And defendant got up, walked toward a water cooler by the front door, and said, "No, I don't think there's quite a pound." A Nancy Newton was also in the room at intervals. Owings went over to a closet, took out two paper sacks, put them on the table and said, "I have twenty cans of marijuana that I will sell you," and Walley stated that he had $200. Owings said, ". . . that would be approximately $10 for a can." Owings dropped the contents of one large brown paper sack on a table, and also disclosed several small brown paper bags. Walley picked up the small sacks and, counting aloud, placed them, twenty in all, in one of the large paper bags. Owings also offered marijuana stems as a bonus, which Walley took. The agent told Owings he had the money out in his car, and that if Owings would go there with him, he would pay him. Defendant took no part in this conversation.

As Walley and other agents were busy with the arrest of Owings, Agent Mannen noticed that appellant had left the apartment; he arrested and handcuffed appellant and put him temporarily in charge of another officer. Mannen entered the

apartment and stood by while Agents Ambrose and Lacey searched the premises.

Then, an hour or an hour and a half after the arrest, Mannen took defendant to the Tulare County jail, where he was placed in a room and left for a short period of time. Mannen returned later and asked defendant about the sale negotiated at the apartment; defendant stated he had no knowledge of the sale and that he had not heard anything of the conversation there. According to his own testimony, Mannen asked defendant if the clothing he was wearing belonged to him and appellant replied, ''I could lie to you and tell you it's not, but I won't, it's mine.'' Mannen then took off defendant's shirt and shook out the pocket debris and said that it looked like there were ''fragments of marijuana'' there. In fact, later, it was found under the laboratory microscope that nine minute pieces of the debris were fragments of marijuana. When Agent Mannen again asked appellant if the shirt were his, defendant Thomas stated that the shirt was not his. In the ensuing conversation, Mannen suggested that defendant was extremely nervous and defendant stated, according to Mannen's testimony, ''I always get nervous when a deal goes down.''

On the stand, defendant denied any conversation at the apartment as to there being a pound of marijuana in the big paper bag and said that when Mannen first asked him, ''Are these your clothes?'' he said, ''No,'' and then later said, ''Well, I could lie to you, but I am not going to, they are mine''; he testified that Mannen then took the shirt away and was gone for about half an hour, during which time another agent came in and talked with him; when Mannen again returned, defendant said, ''No, these aren't my clothes.'' Appellant testified that he had borrowed the shirt, had taken it out of Owings' closet, because the one he had on was dirty. Owings also testified at the trial that defendant had borrowed a shirt of his hanging in the closet, which had been previously worn by him and that the debris in the pocket must have been in the shirt before defendant put it on.

While the specifications of the grounds of appeal are numerous, the points raised by the defendant may be adequately covered under three categories shown by the following questions:

1) Was the defendant taken before an arraigning magistrate within two days after his arrest as required by section 825 of the Penal Code? (See also Cal. Const., art. I, § 8.)

2) Was the evidence found in the pocket of the shirt worn by defendant inadmissible because of an improper arrest or an illegal search and seizure?

3) Was the evidence received sufficient to sustain the judgment of conviction?

■ Appellant claims that he was jailed on June 29, 1965, and not arraigned by a magistrate until July 2, 1965. The clerk's transcript indicates that the information was filed in the superior court on the 29th day of July, 1965, and the defendant was arraigned there on August 2, 1965, but there is no showing with respect to proceedings in the justice court. As a matter of fact, this point was not raised in any way in the superior court, and it, therefore, could not be taken advantage of on this appeal even if it were reported in the record. (*People* v. *Blankenship,* 171 Cal.App.2d 66, 81 [340 P.2d 282].) Furthermore, if the record were adequate on this point, it would not necessarily follow that the judgment should be reversed, in the absence of a showing of prejudice suffered by the defendant as a result of the violation of the time requirement. (*People* v. *Combes,* 56 Cal.2d 135, 142 [14 Cal.Rptr. 4, 363 P.2d 4]; *People* v. *Smith,* 175 Cal.App.2d 396, 401 [346 P.2d 484]; *People* v. *McCrasky,* 149 Cal.App.2d 630, 637 [309 P.2d 115]; *People* v. *Dosier,* 180 Cal.App.2d 436, 440-441 [4 Cal.Rptr. 309].)

The second point is similarly unavailable to defendant on this appeal without the necessity of inquiry as to the basic merits of his specification of error. He contends that the evidence of marijuana contained in the shirt worn by him at the time of his arrest is not admissible on the ground that the arrest and the search were illegal. ■ However, the evidence shows that Agent Mannen was outside of the Owings home listening by electronic apparatus to what was going on in the apartment. Agent Walley was wearing an electric transmitter, and Mannen, seated in his automobile outside in the street, heard what was said by Owings and Thomas as heretofore outlined. Mannen saw the defendant leave the house and at that time arrested him. Agent Mannen had heard the voice of the defendant in the apartment saying that in his opinion there was not a pound of marijuana in the large sack shown by Owings to Walley. This logically led Mannen to believe that the defendant was criminally involved as a participant in the sale; thus, before he saw the defendant come out of the house he had been given ground to think that appellant was involved in the current narcotics transaction. Mannen

did not know at that time that the appellant had been previously convicted of possession of marijuana, and, of course, he could not take that fact into consideration in deciding whether he had the right to make the arrest; furthermore, he was not justified in so acting by reason of what subsequently transpired. However, it seems to us that, in view of the circumstances attending the proposed sale of marijuana to Walley, the agent had legitimate ground to make the arrest, even though it appeared later to prosecuting officials that there was insufficient ground to charge Thomas with the crime of which Owings was accused.

The defendant was not searched for at least one or one and one-half hours after his arrest; he was taken to jail; there his shirt was removed and Mannen shook out the debris, which was used as the sole basis for the later conviction of the appellant. Citing cases with respect to the right to search the residence or home of a defendant at a distance in space or time after his arrest (*Tompkins* v. *Superior Court*, 59 Cal.2d 65, 67 [27 Cal.Rptr. 889, 378 P.2d 113]; *Castaneda* v. *Superior Court*, 59 Cal.2d 439, 442 [30 Cal.Rptr. 1, 380 P.2d 641]), the defendant contends that the delay in making a search of his person at the time he was taken to jail was improper. We cannot approve this assertion; we find that the search at the jail was entirely proper not only for the purpose of acquiring any obvious evidence in connection with the arrest, but also to insure the safety of prisoners and the jail personnel after his incarceration.

There is no need for this court to enter into any further discussion of the subject, because the defendant did not initiate or support this claim by any action in the lower court; the point is not available to him in the appellate court. (Witkin, Cal. Evidence (1958) Exclusion of Illegally Obtained Evidence, § 20, pp. 29-30.) (See also *Robison* v. *Superior Court*, 49 Cal.2d 186, 187-188 [316 P.2d 1]; *People* v. *Williams*, 148 Cal.App.2d 525, 532 [307 P.2d 48]; *People* v. *Prado*, 190 Cal.App.2d 374, 378 [12 Cal.Rptr. 141].) The temporary rule *contra* mentioned in the case of *People* v. *Kitchens*, 46 Cal.2d 260, 262 [294 P.2d 17], does not apply as the instant case was tried after the decision in *People* v. *Cahan*, 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513].

The final objection urged by defendant is that the evidence is not sufficient to sustain the judgment; that is the only real basis for a reversal.

Section 11530 of the Health and Safety Code reads in part as follows:

"Every person who plants, cultivates, harvests, dries, or processes any marijuana, or any part thereof, or who possesses any marijuana, except as otherwise provided by law, shall be punished by imprisonment in the state prison for not less than one year nor more than 10 years and shall not be eligible for release upon completion of sentence, or on parole, or on any other basis until he has served not less than one year in prison.

"If such person has been previously convicted once of any felony offense described in this division or has been previously convicted once of any offense under the laws of any other state or of the United States which if committed in this State would have been punishable as a felony offense described in this division, the previous conviction shall be charged in the indictment or information and if found to be true by the jury, upon a jury trial, or if found to be true by the court, upon a court trial, or is admitted by the defendant, he shall be imprisoned in the state prison for not less than two years nor more than 20 years, and shall not be eligible for release upon completion of sentence, or on parole, or on any other basis until he has served not less than two years in prison."

■ In such a prosecution, the People must prove three things:

1) That the accused exercised dominion and control over the marijuana;

2) That he had knowledge of its presence on his person; and

3) That he had knowledge of its narcotic character. (See *People* v. *Estrada,* 234 Cal.App.2d 136, 155 [44 Cal.Rptr. 165].)

■ The prosecution depended wholly upon the debris, consisting of fragments of a most minute character, shaken from the pocket of the shirt worn by the defendant at the time of his arrest, and mixed with similar traces of tobacco and other materials. There was no accusation that the defendant had anything to do with the possession by Owings of the marijuana in the brown paper bags. The fragments of marijuana found in his shirt pocket were extremely small and prima facie were of such insignficant character that they could not have been sold or smoked by Thomas, or anyone else.

■ There was a sharp conflict of evidence as to whether the defendant owned the shirt where these fragments were

found. More than one witness said that the shirt was not his but Owings', and that the defendant had changed clothing, because his own shirt was dirty and smelled. At the trial, Owings testified that the shirt belonged to him, and that any marijuana in the pocket must have been there before defendant put the shirt on; the defendant testified at the trial that he borrowed the shirt from Owings, and that it was not his. However, there was additional evidence that at one time the defendant had stated that it was his shirt, and it was for the trial court to sift the evidence and determine the ownership of the garment in which fragments of marijuana were found.

The recent cases of *People* v. *Leal,* 64 Cal.2d 504 [50 Cal.Rptr. 777, 413 P.2d 665], and *People* v. *McCarthy,* 64 Cal.2d 513 [50 Cal.Rptr. 783, 413 P.2d 671], decided after the trial of the instant case, make clear certain principles with respect to marijuana offenses, which were previously indicated in several cases decided by intermediate appellate courts, but which at the same time were opposed by other holdings. The following cases, among others, sustained convictions when only a small amount of forbidden drugs was found in the possession of the defendant: *People* v. *Salas,* 17 Cal.App.2d 75 [61 P.2d 771]; *People* v. *Jones,* 113 Cal.App.2d 567 [248 P.2d 771]; *People* v. *Hyden,* 118 Cal.App.2d 744 [258 P.2d 1018]; *People* v. *Anderson,* 199 Cal.App.2d 510 [18 Cal.Rptr. 793]; *People* v. *Marich,* 201 Cal.App.2d 462 [19 Cal.Rptr. 909]; *People* v. *Thomas,* 210 Cal.App.2d 553, 557 [26 Cal.Rptr. 843].

Cases which have held that the presence of only minute quantities of narcotic debris or residue cannot form the basis of an "inference of knowing possession" are: *People* v. *Cole,* 113 Cal.App.2d 253 [248 P.2d 141]; *People* v. *Aguilar,* 223 Cal.App.2d 119 [35 Cal.Rptr. 516]; *People* v. *Melendez,* 225 Cal.App.2d 67 [37 Cal.Rptr. 126]; *People* v. *White,* 231 Cal.App.2d 82 [41 Cal.Rptr. 604]; *People* v. *Sullivan,* 234 Cal.App.2d 562 [44 Cal.Rptr. 524].

*People* v. *Leal, supra,* 64 Cal.2d 504, and *People* v. *McCarthy, supra,* 64 Cal.2d 513, resolve this conflict. They hold that the provisions of law forbidding the possession of an illegal narcotic do not contemplate that convictions should be obtained from the sole proof of the possession of minute quantities of the forbidden drug; to justify convictions, the narcotic should be in quantities large enough to be the subject of sale, or of use by the possessor or others. In the opinion in *People* v. *Leal, supra,* 64 Cal.2d 504, 512, the Supreme Court speaking through Mr. Justice Tobriner states: "We conclude

that the statutory differentiation of the various crimes as well as the history of the cases culminating in *Sullivan* show that in penalizing a person who possesses a narcotic the Legislature proscribed possession of a substance that has a narcotic potential; it condemned the commodity that could be used as such. It did not refer to *useless* traces or residue of such substance. Hence the possession of a minute crystalline residue of narcotic useless for either sale or consumption, as *Sullivan* points out, does not constitute sufficient evidence in itself to sustain a conviction. Since in the present case the prosecution proved no more than defendant's possession of traces of narcotics and did not show that such residue was usable for sale or consumption, we remit it to the trial court for the purpose of ascertaining whether or not such factual elements were present.''

 It is common experience for anyone who has ever smoked cigarettes to find in his coat pocket, sometimes long after the use of the coat, traces of tobacco, which, unknown to him, must have been rubbed from the cigarettes carried in the pocket. It could hardly be maintained that a person having such traces of tobacco in his coat pocket knew that it was there, or intended either to smoke it or sell it. A somewhat similar viewpoint is set forth in the *Leal* and *McCarthy* opinions; the principle ''de minimis non curat lex'' is applicable even to this serious accusation, and the Supreme Court has indicated that the finding alone of minuscule amounts of marijuana debris, such as were shaken from Thomas' shirt, do not warrant a conviction. The judgment, therefore, must be reversed, and the court upon retrial should inquire whether the traces of marijuana in the shirt worn by the defendant were such as to warrant a conclusion that their presence was known to the defendant, and that he either intended to use or sell these minute marijuana fragments. In the absence of a positive conclusion to that effect, or of other completely separate evidence of guilt, the defendant should be found to be not guilty of the offense charged.

The judgment is reversed.

Stone, J., and Gargano, J., concurred.