[Crim. No. 14296.   Second Dist., Div. One.   Dec. 9, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES NORMAN BRADEN, Defendant and Appellant.

Richard S. Buckley, Public Defender, Mel Albaum, Floyd W. Davis, and James L. McCormick, Deputy Public Defenders, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bruce M. Perlman, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of possessing marijuana.

In an information filed in Los Angeles on May 4, 1967, defendant was charged with having possessed marijuana on April 13, 1967. Defendant pleaded not guilty and in a jury trial was found guilty as charged. Proceedings were suspended, probation was granted for two years, a part of the terms being that he spend 96 days in jail (the time from the date of arrest to date of disposition), that he obey the laws, etc., and that he be released forthwith. A timely notice of appeal was filed.

A résumé of some of the facts is as follows: on April 13, 1967, at about 11 a.m. Officer Smith of the Beverly Hills Police Department arrested Theodore Von Fischer in a bank on Wilshire Boulevard in Beverly Hills on a charge of forgery. At the police station, the police found some packaged marijuana in Von Fischer's billfold. The police ascertained that Von Fischer went under the name of Clemente Nava Mena, Jr., and that he resided in an apartment located at 2017 North Argyle in Los Angeles. Von Fischer reportedly indicated that there could be some more marijuana in the apartment. It was ascertained that although there might be others in the apartment Von Fischer was the renter, that it was his apartment, that it was possible that an armed service deserter might be at the apartment too. The officers asked Von Fischer for a consent to search the apartment and Von Fischer, at about 1 p.m., wrote out a consent for Officers Smith and Carden of the Beverly Hills Police Department to search the apartment. At about 4 p.m. the two officers went to the apartment, knocked on the door and identified themselves as police officers in answer to an inquiry from inside the apart-

ment as to who was there. Fred Lasper opened the door and when asked if this was the apartment of Clemente Mena, Jr., answered that it was Mena's apartment. Braden, the defendant herein, was in bed and apparently asleep. Lynda Williams, a female, also was in the apartment. Each person then in the apartment stated to the officers that the apartment was not his, that it belonged to Mena. The consent to search the place by Mena was exhibited to Williams, Braden and Lasper. Braden indicated an objection to the search and said that such could not be done without a warrant although he himself was only an unwanted guest in the apartment. Smith observed on a coffee table immediately at the foot of the bed in which Braden had been lying a strainer (of the type which is frequently used in preparing marijuana for use) and the debris of some green leafy material which appeared to be marijuana. A search was made of the apartment and Carden located a sack of marijuana in the kitchen area. Upon discovery of the sack of marijuana the three persons in the apartment were placed under arrest and advised of their constitutional rights. Braden indicated that he understood his rights. Later that same day at the police station in Beverly Hills, Smith conversed with Braden with reference to the marijuana found in the apartment. Prior to this conversation Braden was again advised of his constitutional rights and he again indicated that he understood his rights. Braden then stated freely and voluntarily that he had found the marijuana in a trash can the night before, that it was his and that he had brought it into the apartment for the purpose of sharing it with the others. Braden admitted that he had used marijuana previously.

Appellant now asserts that the search and seizure was unreasonable and violative of his constitutional rights in that the arresting officers had no right to make a search in Los Angeles; there was no voluntary consent by Von Fischer to a searching of the apartment; there was no consent by the immediate occupants of the apartment. Further, appellant asserts that he did not receive a full and fair trial in that the trial judge was guilty of prejudicial misconduct and unnecessarily restricted defense counsel in his cross-examination. We are persuaded that there is no merit to appellant's assertions.

First, with reference as to whether the consent to search was freely and voluntarily given, the record is clearly to the effect that Von Fischer stated to the officers that it was

agreeable with him for the officers to make a search of the apartment, that they probably would find some marijuana in the apartment and that possibly an armed services' deserter might be in the apartment; that he, Von Fischer would write out such a consent for such a search. He did write such a consent and he delivered the document to the officers. There was no duty upon the officers to advise Von Fischer that he could refuse to give such a consent. See *People* v. *Chaddock,* 249 Cal.App.2d 483, 485-486 [57 Cal.Rptr. 582], where it is stated: ■ ''There is no requirement in the law that an officer shall first advise a person of his constitutional rights and of his right to refuse to grant a consent to a search before the officer seeks a valid consent from the person to conduct a particular search. The mere asking of permission to enter and make a search carries with it the implication that the person can withhold permission for such an entry or search.'' (See also *People* v. *Sjosten,* 262 Cal.App.2d 539, 546 [68 Cal. Rptr. 832]; *People* v. *Dahlke,* 257 Cal.App.2d 82 [64 Cal. Rptr. 599]; *People* v. *Smith,* 63 Cal.2d 779 [48 Cal.Rptr. 382, 409 P.2d 222]; *People* v. *Campuzano,* 254 Cal.App.2d 52, 56-57 [61 Cal.Rptr. 695].) ■ It is a question of fact as to whether the consent in question was freely and voluntarily given. Here there is substantial evidence in the record to support the determination that the consent was freely and voluntarily given and under such circumstances the decision by the trial judge should not be disturbed. (See *People* v. *Chavez,* 208 Cal.App.2d 248, 255 [24 Cal.Rptr. 895].)

The evidence in this case is that Braden was an unwanted guest at the time of the arrest. He had no control, right of possession or business of any sort in the apartment. The apartment did not belong to him, he paid no part of the rent and he was in fact overstaying whatever welcome he had in the first instance. The apartment was entirely under the control of Von Fischer. This is in no respect similar to a situation in which joint or common tenants occupy a facility or where an occupant has some standing with reference to the facility. (See also *People* v. *Collins,* 212 Cal.App.2d 151, 153 [27 Cal.Rptr. 825].) In any event when the officers entered lawfully, as they did, and then saw a strainer such as used for preparing marijuana and some marijuana debris in their presence and sight, they had a right to proceed as they did.

Appellant contends that the restrictions imposed on peace officers by section 817 of the Penal Code precludes a lawful seizure and arrest under the circumstances here presented. It is to be remembered that Von Fischer was in jail on a forgery

charge; while being booked it was disclosed that he had a packet of marijuana in his billfold. Upon proper questioning Von Fischer disclosed where he lived and implied that more contraband could be turned up at his apartment and when asked where the contraband was located in his apartment he said, "You will find out." Given a consent to search the apartment over which Von Fischer had complete control the officers were properly pursuing their duties in going to the apartment to develop further evidence against Von Fischer who undoubtedly would be tried in the Beverly Hills area of the Los Angeles Superior Court. It is appropriately stated in *People* v. *Sandoval,* 65 Cal.2d 303, 311-312 [54 Cal.Rptr. 123, 419 P.2d 187] : "We consider, third and finally, defendant's argument that his arrest and search in the City of Huntington Park cannot be sustained because the officers, both employed by the City of Los Angeles, could not act as 'peace officers' (Pen. Code, §§ 817, 836) outside city limits. We hold that the officers here acted within the scope of their official authority under the generally recognized principle that an officer may pursue a suspected felon into another jurisdiction and may arrest him there so long as the arrest is otherwise lawful. [Citation.]"

In any event, however, no objection was made to the receipt of the evidence upon the ground now raised. In *People* v. *Talley,* 65 Cal.2d 830, at pp. 837-838 [56 Cal.Rptr. 492, 423 P.2d 564] where present counsl for appellant were counsel for Talley the court said: "Defendants further contend that Elwood's arrest and the search of his home in Los Angeles cannot be upheld because the officers, who were employed by the City of Long Beach, could not act as 'peace officers' (Pen. Code, §§ 817, 836) outside city limits. [Citations.] However, at the trial defendants did not object on this ground to the arrest and search, and we will therefore not consider it on their appeal. [Citation.]" And in *People* v. *Fritz,* 253 Cal. App.2d 7, 14 [61 Cal.Rptr. 247], the court stated: "In support of this contention appellants first argue that the arresting Downey police officers had no power, incident to the arrest, to search anything except appellants' persons for the weapons (Pen. Code, § 846) because they made both the arrest and the search of the vehicle in question in county area, just outside of Compton and admittedly outside of Downey. Consequently, at this location, they had only the arrest and search powers of private persons and not of peace officers.

"Clearly, this was the law at the time of the arrest and search before us. [Citation.] However, at the trial appellants did not object to the arrest and search on this specific ground and we will therefore not consider this argument on this appeal. [Citation.]"

Appellant seems to want this court now to believe that no objection was made at the proper time in court because of the unfavorable atmosphere and that to object would have made an unfavorable impression upon the jury. The fact is that the proceedings in question were had in the absence of the jury in a special pretrial proceeding out of the presence of the jury in conformity with sections 400 and 406, of the Evidence Code.

Finally, appellant complains of what he denominates misconduct of the judge. It is asserted that in one part of the proceedings the judge ordered the witnesses who were not testifying to be excluded from the court room. The record indicates that on June 21, 1967, at 2 p.m. the first witness was called under stipulation that the matter proceed without a jury for the purpose of determining whether or not the evidence that was to be introduced was uncovered with probable cause and not in violation of constitutional requirements. Officer Smith was first called by the prosecution and appellant requested that the witnesses be excluded and Officer Carden then absented himself from the courtroom. The record does not state that the court ordered him to leave. Smith was extensively cross-examined by appellant. Von Fischer who was then in custody on the heretofore-mentioned charges was the next witness and he was thoroughly cross-examined. Carden was called as a witness and was extensively cross-examined. The prosecution then moved to admit into evidence the consent document (to which there was no objection) and the sack of marijuana—appellant objected upon the ground that it (the marijuana) was the product of an unreasonable search and seizure. The court stated that the evidence would be received. Appellant wanted to cite some cases to the court after the ruling had been made and the judge indicated that he was familiar with the cases and referred to them frequently, and that the ruling would be that the items were admitted into evidence. The prosecution then, continuing in the absence of the jury and under the provision of the Evidence Code, sought to establish by witnesses that the confession of Braden was proper and to lay the foundation required "under *Miranda*." Officer Smith was called and while testifying it was noted by appellant that Officer Carden was in the

courtroom. Appellant moved for a mistrial and the motion was denied. The court stated that no harm had been done, appellant's counsel stated, "I feel there is a harm done." The court then said, "Well, there wasn't. Sit down. Let's get to the facts in this case." The record discloses that Carden was in the court room for a matter of 10 to 15 seconds during Officer Smith's testimony with reference to the confession and otherwise he was outside of the courtroom except when he himself was testifying. The court ruled that the oral admission of Braden was admissible and that there was probable cause. The matter was then continued over to the next day at which time a jury was selected to hear the matter. The clerk's minutes recite that "defendant's motion to exclude witnesses is denied." The jury was in no way prejudiced by the proceedings which occurred the day before it was selected.

Officer Carden testified that he was a Beverly Hills policeman, that he previously had seen the bag of marijuana in the apartment on April 13, 1967, that he found the bag in a shopping bag under the sink in the kitchen, that he also found some other marijuana in the kitchen and that Braden, Casper and Williams were in the apartment at the time and occasion in question. Appellant cross-examined the witness on almost every conceivable thing he could think of. The court called attention to the fact that the questions were repetitious, that they had to do with immaterial matters and urged counsel to get to something of probative value. Counsel asked the officer what Braden had said when he was told to get out of bed. An objection was sustained and the court urged that he get along with the case. Counsel then said, "Well, I will call him as my own witness, your Honor, . . ." The judge then pointed out that nothing of any merit was being covered, that counsel was going over matters already covered or matters that did not go to the issues involved and that when a proceeding got to that point it was time for the judge to close off that line of questioning. After counsel obviously tried to argue with the judge the latter said, "Sit down. I don't want to have any trouble with you. Sit down. All right, go ahead." Counsel then inquired whether he could ask additional questions and he was told by the court that if they were material questions to proceed. Counsel then proceeded with considerable further cross-examination.

The trial judge was simply attempting to have counsel proceed to try his side of the action with reasonable dispatch and to get to the real issues involved in the case. The court had

the power under the circumstances to limit the examination to material matters. (See *People* v. *Yuen,* 32 Cal.App.2d 151, 160 [89 P.2d 438, 90 P.2d 291].)

In any event the judge instructed the jury that he had not intended by anything he had said to intimate or suggest what the jury should find as to the facts. (CALJIC 7-A.) (See also *Miller* v. *Western Pac. R.R. Co.,* 207 Cal.App.2d 581, 607 [24 Cal.Rptr. 785] ; *Howarth* v. *Maroney,* 228 Cal.App.2d 116, 123 [39 Cal.Rptr. 260].)

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 5, 1969.